UNITED STATES of America, Appellee,

v.

**Ralph NASHAWATY, Defendant, Appellant.**

No. 77–1076.

United States Court of Appeals, First Circuit.

Argued Dec. 8, 1977.

Decided March 13, 1978.

Joseph C. Delcore, Everett, Mass., by appointment of the court, for defendant, appellant.

James E. O'Neil, Asst. U. S. Atty., Boston, Mass., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., was on brief, for appellee.

Before COFFIN, Chief Judge, CAMPBELL and BOWNES, Circuit Judges.

LEVIN H. CAMPBELL, Circuit Judge.

Appellant Ralph Nashawaty and his brother, Albert Nashawaty, were indicted on May 6, 1976, for conspiring maliciously to damage and destroy a building and property used in interstate commerce by means of an explosive, and for so damaging and destroying such property, in violation of 18

U.S.C. §§ 2, 371, and 844(i). A jury trial resulted in a verdict of guilty on all counts against both defendants, and this appeal followed.

The arson out of which this prosecution grew occurred on October 5, 1975, when an explosion of suspicious origin damaged the shop of the New England Spray Paint Co. The principal evidence against the Nashawaty brothers was the testimony of William Sullivan, the president of New England Spray Paint. According to Sullivan, he had formed the company in June, 1974. A year later he took on the Nashawaty brothers as partners in the business, Ralph assuming the post of treasurer and Albert becoming a director. Albert then loaned money to the business at the rate of 15½% interest. Neither brother had examined the financial records of the company before joining it. According to Sullivan, soon after the association began Ralph Nashawaty expressed concern about the financial health of the business and suggested that arson might be a solution. Sullivan demurred and proposed a bank loan instead. Ralph again brought up the subject of arson several weeks later. Sullivan testified that he told Ralph of his wish not to have any part in such activity. Ralph responded that plans were already under way and that his brother Albert had made a down payment for the job. According to Sullivan, he then offered to sell his interest in the company to the Nashawaty brothers. Ralph told him it was too late and threatened his life if he were to talk.

Later in August Ralph Nashawaty expressed an interest in changing the company's insurance coverage. The Government introduced into evidence Ralph's notes on the company's insurance needs; on this paper were the words "explosion coverage?". Subsequently the Nashawaty brothers obtained new and more extensive coverage.

In September Sullivan noticed certain office equipment was missing from the shop, and upon inquiry Ralph informed him he had ordered Albert to take the equipment home to protect it. Government agents subsequently seized the equipment at Albert Nashawaty's residence.

A week before the actual explosion, Ralph warned Sullivan to stay away from the shop over the weekend. The next week, Ralph explained to Sullivan that something had gone wrong with the plan. At the end of that week, Ralph again warned Sullivan to stay away, and in the early morning hours of Sunday, October 5, an explosion wracked the shop. According to Sullivan, he met Ralph at the site of the blast and, when the two retired for coffee, was told the arsonist did a "lousy job" and would not be paid. Sullivan met Ralph and Albert the next day; Albert warned Sullivan to keep silent under threat of death and declared his intent not to pay the arsonist for such poor work. Government agents found in the debris a battery and clock taped together, long wires and alligator clips attached, and a residue of dynamite.

Some time after the blast Sullivan began to cooperate with the Government's investigation. He testified as to four conversations he had with the Nashawaty brothers in January and February of 1976,[1] during which he carried a hidden microphone and transmitter that enabled Government agents to record what was said. The Nashawaty brothers each made various incriminating remarks during these conversations, revealing their dissatisfaction with the method chosen by the arsonist and that Albert had paid $17,000 for the job. To corroborate Sullivan's testimony, a tape of a small portion of one of these conversations was played to the jury over objections of defense counsel. Government agent Gui-

---

1. The Government's brief described in its statement of facts a conversation on January 17, 1976, evidence of which was not part of the record, and omitted to describe evidence of a conversation on February 10, which was submitted to the jury. The Assistant United States Attorney who tried the case and handled the appeal subsequently submitted a letter to this court apologizing for his misrepresentation of the record. While the error fortunately had no lasting consequences, we take it very seriously: nothing can be more important than that the Government get, and keep, its facts straight when arguing to this or any court.

do identified that tape as the one he made of Sullivan's conversation with the Nashawaty brothers. To aid the jury in listening to the tape, the Government submitted, again over defense objections, a transcript of the relevant portion of the taped conversation as a chalk. Government agent O'Reilly testified that he had prepared the chalk by transcribing the conversation on the tape, which he had listened to originally as it was recorded. O'Reilly had listened to the tape as recently as the day before his testimony and affirmed its accuracy as a record of the conversation he had overheard. The court instructed the jury to regard only what it heard on the tape as evidence and to use the transcript only as a listening aid. The transcripts were collected from the jury as soon as the tape had been played.

To establish that the New England Spray Paint shop had been a building used in interstate commerce, the Government introduced the testimony of an official of the Polaroid Corp., the primary customer of the company. This official stated that at the time of the blast 562 plastic covers belonging to Polaroid were in the company's shop waiting to be painted; these covers were destined to be installed on cameras sent all over the world.[2] He also submitted a list of other items which Polaroid had obtained from outside of Massachusetts and sent to New England Spray Paint for finishing.

Appellant's principal ground for appeal is his contention that admission of evidence concerning Sullivan's conversations with him during January and February of 1976 violated his right to counsel. He also objects to the admission of the tape into evidence and the use of the transcript as a chalk; the failure of the court to grant a motion for acquittal at the end of the Government's case; and certain comments of the district court concerning the evidence.

In attacking the admission of all evidence concerning his conversations with Sullivan after Sullivan began to act as a government agent, appellant seeks to apply *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), to the facts of this case. *Massiah* excluded evidence procured by a government informer from a suspect who already had been indicted, on the ground that the interrogation violated the suspect's right to counsel. Appellant concedes that the conversations at issue here, which took place between January 30 and February 10, 1976, occurred before he or his brother was arrested or indicted and even before he made any appearance before a grand jury, but argues that the fact that counsel had been retained and that the brothers allegedly had become the focus of the investigation at the time of the surreptitious interrogations means that the right to counsel had attached.[3] He relies principally on language in *United States v. Brown*, 551 F.2d 639, *rehearing en banc granted*, 558 F.2d 327 (5th Cir. 1977), for the proposition that the right to counsel attaches once a suspect has become the focal point of a criminal investigation, and argues such had become his status at the time his statements were recorded.

■■ Appellant wrenches statements in *Brown* out of context and distorts their significance. The suspect there had already been arrested and was in the custody of state authorities on state charges arising out of the same misconduct that was the subject of the federal investigation. Here, by contrast, there were no pending charges against appellant of any sort. Appellant cites no cases suggesting that the right to counsel attaches before a suspect has been

---

2. The statement of facts contained in the Government's brief declares, "These parts were purchased by Polaroid outside of Massachusetts . . . ." This assertion is without record support; the Government submitted a list of Polaroid parts shipped to New England Spray Paint that were purchased outside of Massachusetts, but the parts in question were not among those listed.

3. Apparently the Nashawaty brothers received subpoenas to testify before the grand jury some time before the February 3 conversation that was the subject of the tape played to the jury, although the exact time of the subpoenas was not established in the record.

either arrested or indicted. *See Brewer v. Williams*, 430 U.S. 387, 398, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977); *Miranda v. Arizona*, 384 U.S. 436, 444 & n. 4, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966); *Escobedo v. Illinois*, 378 U.S. 478, 490–91, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). Until one or the other of those two events has occurred, the suspect has not been "accused" of a crime by the Government, whatever suspicions may be lurking in the minds of grand jurors or police investigators. The Supreme Court recognized this fact in *Hoffa v. United States*, 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966), where the Court summarily rejected an argument that the right to counsel attached upon accumulation of sufficient evidence by the Government to arrest a suspect. The Court declared:

> "Nothing in *Massiah*, in *Escobedo*, or in any other case that has come to our attention, even remotely suggests this novel and paradoxical constitutional doctrine, and we decline to adopt it now. There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction."

*Id.*, 385 U.S. at 310, 87 S.Ct. at 417 (footnote omitted). As appellant had not been taken into custody or indicted at the time the conversations were recorded, *Massiah* does not apply.

▮ Appellant objects to the admission of the tape recording into evidence on the additional grounds that the poor audibility of the recording rendered it lacking in probative value and that an inadequate foundation had been laid before its submission to the jury. Neither of these objections is substantial. The audibility of the tape was poor, but enough of the conversation was audible and relevant to the purpose for which it was admitted to preclude a ruling that the district court abused its discretion in admitting the tape. *Gorin v. United States*, 313 F.2d 641, 652 (1st Cir. 1963), cert. denied, 379 U.S. 971, 85 S.Ct. 669, 13 L.Ed.2d 563 (1965); *see United States v. DiMuro*, 540 F.2d 503, 512 (1st Cir. 1976), cert. denied, 429 U.S. 1038, 97 S.Ct. 733, 50 L.Ed.2d 749 (1977). Furthermore, the foundation requirement was satisfied here by the testimony of agents Guido and O'Reilly, who were able to testify as to the accuracy, authenticity, and identity of the tape. *United States v. Steinberg*, 551 F.2d 510, 515 (2d Cir. 1977).

▮ Appellant also objects to the use of transcripts by the jury as an aid to following the tape. The court properly instructed the jury to rely only on what it heard, not on what it read. This court and others have upheld the use of such transcripts in this manner. *United States v. DiMuro, supra*, 540 F.2d at 511 n. 13; *United States v. Bryant*, 480 F.2d 785, 790–91 (2d Cir. 1973). The district court hardly could be held to have abused its discretion in so permitting the Government to employ this chalk.

▮ Appellant's contention that the Government had failed to prove the use of the New England Spray Paint shop in interstate commerce is equally meritless. His sole objection seems to be that the Government did not prove by direct evidence the presence in the shop at the time of the blast of products that had their origin outside the state of Massachusetts. The Government did prove, however, that in the regular course of its business the company received goods from Polaroid that originated outside the state, and that at the time of the blast the building contained items that were destined to be sold in interstate commerce. Without the embellishment attempted by the Government's brief, *see* note 2 *supra*, this evidence was sufficient to meet the

jurisdictional requirement of 18 U.S.C. § 844(i).[4]

■ Appellant's final claim relates to a comment on the evidence made by the district court during the delivery of its instructions to the jury. The district court said:

> "With respect to this other principle of the law of evidence that I alluded to—this has to do with what is called admissions—according to the testimony of Sullivan, and this was corroborated by the tape that was played, the defendants and each of them made admissions against interest, that is to say, they made statements which are of an incriminating nature . . . ."

After objection by defense counsel, the district court instructed the jury that it was free to ignore the court's comments on the evidence, particularly the comment regarding the corroborative effect of the tape, and that determinations of credibility were for the jury alone to make. Given the record as a whole, it does not appear that this court, limited by the subsequent instructions, constituted an abuse of the district court's settled authority to comment on the evidence. *See Quercia v. United States,* 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933). The district court merely indicated that it found the impact of the tape persuasive in confirming Sullivan's account of his conversation with appellant; it did not either mislead the jury or supplement the evidence with its own observations.

*Affirmed.*

---

**4.** The Government's brief miscites *NLRB v. Reliance Fuel Corp.,* 371 U.S. 224, 226, 83 S.Ct. 312, 9 L.Ed.2d 279 (1963), as an interpretation of the jurisdictional language of 18 U.S.C. § 844(i). The quoted language very clearly applies only to the National Labor Relations Act, which has its own definition of the term "affecting commerce". *See* 29 U.S.C. § 152(7). Whether or not *Reliance Fuel* is applicable here by way of analogy, the manner in which it was cited by the Government was, at the very least, misleading.