STATE OF NEBRASKA, APPELLEE, V. DUANE FULLER,
APPELLANT.

278 N. W. 2d 756

Filed May 1, 1979. No. 42125.

Richard L. Schmeling, for appellant.

Paul L. Douglas, Attorney General, and Judy K. Hoffman, for appellee.

Heard before KRIVOSHA, C. J., BOSLAUGH, McCOWN, CLINTON, BRODKEY, WHITE, and HASTINGS, JJ.

BOSLAUGH, J.

The defendant appeals from a sentence to life imprisonment for first degree murder. The assignments of error relate to the sufficiency of the evidence to support the conviction; the overruling of the defendant's motion to suppress; and the trial court's instructions to the jury.

The defendant was charged with killing Marvin

Gerheardt on September 3, 1977. On the date in question the defendant and Gerheardt were prisoners in the penal complex confined in cell C-4 in the east cell house at the State Penitentiary. Two other prisoners, Charles Jack Clark and Robert Bessent, were confined in the same cell. Later, Bessent was moved and Kem Kershaw moved into the cell.

The evidence shows that Gerheardt was despondent and had been talking about committing suicide for some time. He had made several attempts by injecting drugs and air into his veins. On September 3, 1977, Gerheardt had obtained an empty 5-gallon plastic milk bag which was inflated and then attached to a hypodermic syringe from which the plunger had been removed. While Gerheardt held his arm so as to expose a vein near his elbow, the defendant inserted the needle into the vein. The defendant then collapsed the plastic bag forcing air into Gerheardt's body. Gerheardt immediately suffered distress and was dead by the time he had been removed to a hospital. An autopsy showed that Gerheardt had died from pulmonary edema secondary to acute heart failure resulting from the injection of air into his body.

Gerheardt's death was investigated by the State Patrol and all occupants of the cell were questioned. The defendant gave a brief, nonincriminating statement without requesting counsel. After that day, the defendant was interrogated on seven separate occasions. Except for one occasion, he either requested counsel which was not furnished or did not give a statement. On September 29, the defendant gave a second statement which was not incriminating, although he admitted disposing of the plastic milk bag.

On or before November 2, 1977, Clark decided to cooperate with the authorities in exchange for a transfer. He gave a statement which incriminated Fuller, but the investigators wanted more satisfac-

tory evidence. Clark then agreed to be wired with a transmitter and to attempt to induce defendant to discuss his role in Gerheardt's death so that the investigators could hear and record Fuller's own incriminating statements.

Defendant made a detailed statement to Clark on November 17, 1977. It was recorded, but technical problems prevented its accurate reproduction and it was not offered in evidence. That same evening, the investigators disclosed the recording to Fuller who then gave a confession which was received in evidence at the trial. Clark and Kershaw also testified as to Fuller's statement.

Fuller's statements to Clark were obtained at the request of the investigators. Although the statements were elicited through deception, they were admissible because deception does not tend to make a statement involuntary or unreliable. Heldt v. State, 20 Neb. 492, 30 N. W. 626 (1886). Electronic surveillance with the cooperation of one party has not been afforded constitutional protection. See, Cook, Constitutional Rights of the Accused - Pretrial Rights, § 65, p. 401 (1972); 57 A. L. R. 3d 172, Admissibility, in Criminal Prosecution, of Evidence Obtained by Electronic Surveillance of Prisoner (1974).

The fact that the statements were obtained at the request of the patrol officers presents a more serious problem. In Massiah v. United States, 377 U. S. 201, 84 S. Ct. 1199, 12 L. Ed. 2d 246 (1964), Massiah, after indictment, made voluntary and incriminating statements to another indictee who was cooperating with the prosecution. A radio transmitter had been placed in the informer's car and an investigator listened to the defendant's conversation. The United States Supreme Court held Massiah's statements, deliberately elicited after indictment and in the absence of his retained counsel, were not admissible.

In Brewer v. Williams, 430 U. S. 387, 97 S. Ct. 1232,

at p. 1239, 51 L. Ed. 2d 424 (1977), the court said the right to counsel attached "at or after the time that judicial proceedings have been initiated against him — 'whether by way of formal charge, preliminary hearing, indictment, information, or arraignment.' "

The above cases may be distinguished because in those cases the defendant had been arrested or charged at the time the statements were made. The fact that the defendant in this case was interrogated on seven occasions prior to giving incriminating statements elicited by the authorities is some indication that the investigation had focused on the defendant. However, there is no right to have charges filed even though the authorities have probable cause to believe a crime was committed by a certain person. In Hoffa v. United States, 385 U. S. 293, 87 S. Ct. 408, at p. 417, 17 L. Ed. 2d 374 (1966), the United States Supreme Court said: "Nothing in Massiah, in Escobedo, or in any other case that has come to our attention, even remotely suggests this novel and paradoxical constitutional doctrine, and we decline to adopt it now. There is no constitutional right to be arrested. The police are not required to guess at their peril the precise moment at which they have probable cause to arrest a suspect, risking a violation of the Fourth Amendment if they act too soon, and a violation of the Sixth Amendment if they wait too long. Law enforcement officers are under no constitutional duty to call a halt to a criminal investigation the moment they have the minimum evidence to establish probable cause, a quantum of evidence which may fall far short of the amount necessary to support a criminal conviction." See, also, United States v. Nashawaty, 571 F. 2d 71 (1st Cir., 1978); United States v. DeVaughn, 541 F. 2d 808 (9th Cir., 1976); Cook, Constitutional Rights of the Accused — Trial Rights, § 77, p. 299 (1974).

The circumstances surrounding Gerheardt's death placed Fuller within the narrow scope of the investi-

gation. Prior to the statement to Clark, the evidence against Fuller consisted of his admitted disposal of the death instrument and nonincriminating statements as opposed to Clark's statements. Both Fuller and Clark claimed to be cooperating in exchange for special benefits and, of course, personal exculpation for the murder. As the investigators told Clark, they needed much better evidence to believe him and the investigation continued.

The preliminary evidence necessarily focused the investigation on Fuller's involvement to a greater degree; but Clark's questions were investigatory and the accusatory stage with its adjunct right to counsel had not begun. The testimony of Clark as to Fuller's statements to him was admissible. Hoffa v. United States, *supra*.

Following Fuller's November 17, 1977, recorded conversation with Clark, the defendant was interrogated at the penal complex at 6:33 p.m., by investigators Renner and Osborne. The defendant refused to give a statement and refused to waive his right to have an attorney present. He was then kept isolated in a custodial area of the prison until 9:30 p.m. At the request of the county attorney, Fuller was taken to the county attorney's office and a second interrogation, complete with Miranda warnings, began at 10 p.m. Fuller decided to waive counsel and make a statement. The evidence indicates that the defendant may have believed that the county attorney would find extenuating circumstances and not charge him with first degree murder. The expectation that cooperation might lead to leniency does not necessarily render a confession involuntary, although it frequently is a determining factor. Cook, Trial Rights, *supra*, § 74, p. 292-94.

Fuller was alone with the county attorney from 10 p.m. to 11 p.m. After being read his rights and again asserting his rights, Fuller decided to waive his constitutional rights and make a confession.

Both the county attorney and Fuller agree that Fuller's decision to waive his rights and confess was a result of the county attorney's decision to file first degree murder charges in the morning unless Fuller's statement was somehow mitigating *and that a mitigating statement could not be made to the county attorney if Fuller insisted on having counsel present.*

Although Miranda v. Arizona, 384 U. S. 436, 86 S. Ct. 1602, 16 L. Ed. 2d 694 (1966), does not require an absolute halt to all conversations by the police with the defendant once the right to silence is asserted, observance of the constitutional right is tested by the circumstances to determine whether the right was "scrupulously honored." Michigan v. Mosley, 423 U. S. 96, at p. 105, 96 S. Ct. 321, at p. 326, 46 L. Ed. 2d 313 (1975). Mosley's right to cut off questioning was honored when the first interrogation ceased, and the second interrogation involved a different interrogator, a different crime, and no persuasion was used to reverse his earlier refusal to discuss those separate crimes.

Recent cases consider the validity of a subsequent waiver of the once-asserted right to counsel under certain circumstances. United States v. Rodriguez-Gastelum, 569 F. 2d 482 (9th Cir., 1978) (en banc), cert. den., 98 S. Ct. 2266; United States v. Massey, 550 F. 2d 300 (5th Cir., 1977); United States v. Grant, 549 F. 2d 942 (4th Cir., 1977), cert. den., 432 U. S. 908; United States v. Pheaster, 544 F. 2d 353 (9th Cir., 1976), cert. den., 429 U. S. 1099; United States v. Womack, 542 F. 2d 1047 (9th Cir., 1976); United States v. Cavallino, 498 F. 2d 1200 (5th Cir., 1974); Commonwealth v. Watkins, 379 N. E. 2d 1040 (Mass., 1978); Zelenka v. State, 83 Wis. 2d 601, 266 N. W. 2d 279 (1978); People v. Sparks, 82 Mich. App. 44, 266 N. W. 2d 661 (1978). These cases hold that the defendant cannot be persuaded to waive his rights and there is a strong presumption against waiver. "If

the interrogation continues without the presence of an attorney and a statement is taken, a heavy burden rests on the government to demonstrate that the defendant knowingly and intelligently waived his privilege against self-incrimination and his right to retained or appointed counsel." *Miranda* v. *Arizona*, 384 U. S. 436, at p. 475, 86 S. Ct. 1602, at p. 1628, 16 L. Ed. 2d 694 (1966). In Mosley, a concurring opinion stated "* * * a later decision at the authorities' insistence to make a statement without counsel's presence may properly be viewed with skepticism." *Id.*, 423 U. S. 96, at p. 110, n. 2, 96 S. Ct. 321, at p. 329, n. 2. (Justice White concurring). "We understand that the interrogating officer may not badger the suspect or bring pressure intended to induce a change of mind. Nor can he coerce the suspect into reconsidering an assertion of his right to counsel." United States v. Rodriguez-Gastelum, *supra*, at p. 488.

At the suppression hearing, both the defendant and the county attorney testified that the defendant hesitated about waiving his right to have a lawyer present. The defendant testified that he changed his mind " 'Cause [the county attorney] assured me that my statement would help him decide on what type of charge he would file against me, and he thought I was not guilty of first degree murder and that it would help him decide what type of charge to file."

The defendant was asked if the county attorney ever said "anything to you * * * about what he would do if you did not talk to him?" Defendant responded, "He assured me that he would file first degree murder charges on me" on the following morning.

The county attorney testified as follows concerning the initial conversation: "I asked him, 'Do you willingly do without the services of a lawyer at this time,' and he hesitated somewhat. He said some-

thing like I'm not sure, I don't know. I said, 'Well, Mr. Fuller, please understand before I can visit with you, you have to tell me that you will do without the services of a lawyer, and I can't visit with you unless you tell me that,' and I said, 'I'd like to talk to you about this matter, but before I can, you must waive the services of counsel or else I — we're just not going to be able to do it,' and I said, 'Now, will you please tell me are you willing to do without the services of a lawyer?' He said, 'Yes, I will,' something to that effect, 'Yes.' "

The recorded statement reveals the following: "Q. Do you willingly do without the services of a lawyer at this time? A. Mr. Lahners, I — Q. Go ahead. Just speak up. A. Okay. I wonder if I shouldn't have a lawyer before this statement goes down. Q. Well, that's up to you. Now, you have talked to me about it before. And if you want a lawyer, you certainly can have a lawyer. And as I have told you before, you know, what I want to do is I want to get the full story from you. I want to review it in light of the other statements that have already been given to us by other people before I make my decision. Now, you know, you have told me about it once. And I just want to run back through it, put it on paper, because it is getting late and I don't want to make any mistakes, Duane. A. Yeah. Q. If it's agreeable with you and if you want to waive your right to have a lawyer at this time, why, we can go on. That's, you know, that's up to you. Are you willing to do that? A. Yes."

Under the circumstances of this case, we believe the State did not meet its burden to show that Fuller voluntarily and intelligently waived his right to remain silent and his right to have counsel present. This was not a matter of a confession initiated by the defendant as in United States v. Grant, *supra*; Commonwealth v. Watkins, *supra*; Zelenka v. State, *supra*. Nor is it distinguishable as the result of sum-

marizing evidence against the defendant. United States v. Massey, *supra*; United States v. Pheaster, *supra*; United States v. Cavallino, *supra*. Nor was defendant interrogated for a separate offense. Michigan v. Mosley, *supra*. Fuller resisted until he was faced with the murder charge and told that exercising his constitutional right to counsel would prevent him from making a statement to the county attorney.

Because the record fails to show a voluntary waiver of the right to have counsel present, the statement obtained by the county attorney should have been suppressed and not received in evidence. Although the evidence of the State without the confession of the defendant was clearly sufficient, if believed, to sustain a verdict of guilt beyond a reasonable doubt, we are unable to say that the admission of the confession into evidence was harmless error. The jury might find serious problems of credibility with the testimony of Clark and Kershaw, and without the confession of the defendant in evidence the jury might reach a different result. The judgment must, therefore, be reversed and the cause remanded for a new trial.

Appellant assigns as error the refusal of a requested instruction that suicide is not a crime. Suicide is not a crime in Nebraska. Lange v. Royal Highlanders, 75 Neb. 196, 110 N. W. 1110 (1907). "Murder is no less murder because the homicide is committed at the desire of the victim. He who kills another upon [the other's] desire or command is, in the judgment of the law, as much a murderer as if he had done it merely of his own [volition]." Turner v. State, 119 Tenn. 663, 108 S. W. 1139, at p. 1141 (1908). See, also, Martin v. Commonwealth, 184 Va. 1009, 37 S. E. 2d 43 (1946). The requested instruction had no bearing upon defendant's guilt or innocence.

The Nebraska Criminal Code, which became effective January 1, 1979, makes assisting suicide a

criminal offense punishable as a Class IV felony. § 28-307, R. S. Supp., 1978. The appellant argues that he should be tried under this statute and its substantially diminished maximum penalty of 5 years imprisonment or $10,000 fine, or both. § 28-105 (1), R. S. Supp., 1978. The new code, however, is not applicable. State v. Weinacht, *ante* p. 124, 277 N. W. 2d 567. "The provisions of this code shall not apply to any offense committed prior to January 1, 1979. Such an offense shall be *construed and punished* according to the provisions of law existing at the time of the commission thereof in the same manner as if this code had not been enacted." (Emphasis supplied.) § 28-103 (1), R. S. Supp., 1978. Assisting suicide was not a separate offense on September 3, 1977, and the homicide statutes were applicable. See §§ 28-401 to 28-403.01, R. R. S. 1943.

The appellant's argument raises a question as to whether the sentence is excessive because punishment for the same conduct is now reduced. By statute, an imposed sentence is to be reduced to the new maximum whenever the Legislature decreases the maximum period of confinement. § 29-2204.01, R. R. S. 1943. However, that provision is limited to the amendment of "the particular law under which such sentence was pronounced." See State v. Rubek, 189 Neb. 141, 201 N. W. 2d 255 (1972). Here, the defendant was convicted and sentenced under the homicide statutes. §§ 28-401 to 28-403.01, R. R. S. 1943. That penalty remains unchanged. Nebraska Criminal Code, §§ 28-105 (1) and 28-303, R. S. Supp., 1978. The defendant is not entitled to a reduction in sentence.

The defendant also argues that he could not have formed the requisite intent to justify a charge of murder as he was unaware that Gerheardt's apparatus could actually cause death. The evidence does not support this contention. Defendant's cellmate, Clark, testified that all three of them regularly injected various drugs; they discussed Ger-

heardt's probability of success in his proposed suicide based on this experience. Defendant later told Kem Kershaw that he knew Gerheardt could not kill himself with the small injections of air that he had been giving himself but that the 5-gallon "milk bag was enough air that would surely explode the heart inside of him [Gerheardt] if it was injected into the vein."

The defendant also contends that an instruction on a lesser-included offense of manslaughter should have been given. In a homicide case, the jury should only be instructed on those degrees of homicide that are supported by the evidence. State v. Simpson, 200 Neb. 823, 265 N. W. 2d 681 (1978); State v. Stewart, 197 Neb. 497, 250 N. W. 2d 849 (1977). Manslaughter is not an appropriate instruction where the evidence clearly establishes either first degree murder or innocence and the court is not required to give the instruction. Davis v. State, 116 Neb. 90, 215 N. W. 785 (1927); Thompson v. State, 106 Neb. 395, 184 N. W. 68 (1921). Here, the evidence does not support a killing without intent; and there was no sudden quarrel or unintentional act. See § 28-403, R. R. S. 1943. The instruction was properly deleted at the request of both counsel.

Equally without merit is the argument that the court should have given an instruction on the theory that Gerheardt dominated Fuller and forced him to assist in his death. At trial, defendant's attorney did not request such an instruction for good reason. Duress or compulsion is no excuse to a charge of homicide. 22 C. J. S., Criminal Law, § 44, p. 135. Moreover, general subservience alone is inadequate to establish duress. Compare State v. Schroeder, 199 Neb. 822, 261 N. W. 2d 759 (1978), where justification was not a defense to an assault.

The final assignment of error relates to the overruling of the motion to produce prior statements of state witnesses before trial. The trial court is

vested with broad discretion in considering discovery requests of defense counsel and error can be predicated only upon an abuse of such discretion. State v. Isley, 195 Neb. 539, at p. 544, 239 N. W. 2d 262 (1976). The record shows that defense counsel was able to depose both Kershaw and Clark and that the court compelled production of the investigative reports of these witnesses' initial statements. No other suggestion of prejudice is claimed or suggested by the record. Abuse of discretion is not shown by denial of access to the witnesses' statements.

The judgment of the District Court is reversed and the cause is remanded for a new trial.

REVERSED AND REMANDED.