THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v.
LLOYD PERKINS, Defendant-Appellee.

Fifth District    No. 5—87—0286

Opinion filed November 21, 1988.

John Baricevic, State's Attorney, of Belleville (Kenneth R. Boyle, Stephen E. Norris, and Gerry R. Arnold, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellee.

PRESIDING JUSTICE HARRISON delivered the opinion of the court:

On March 31, 1986, the defendant, Lloyd Perkins, was charged by criminal complaint with murder in violation of section 9—1(a)(1) of the Criminal Code of 1961 (Ill. Rev. Stat. 1985, ch. 38, par. 9—1(a)(1)). The State issued a warrant for the defendant's arrest the next day. On June 19, 1986, a grand jury in St. Clair County handed up an indictment of the defendant for murder. On April 8, 1987, the circuit court of St. Clair County granted the defendant's motion to suppress statements made to an undercover police officer and to an informant. The State appeals. We affirm.

On November 8, 1984, Richard Stephenson was shot and killed in Fairview Heights, Illinois. The homicide remained unsolved as of the beginning of 1986. In March of 1986, Agent Kenneth Korunka of the Department of Criminal Investigation in Litchfield, Illinois, contacted the Fairview Heights police department. Korunka advised that Donald Charlton, an inmate at the Graham Correctional Facility in Hillsboro, Illinois, serving a six-year prison sentence for burglary, had information concerning a homicide in the Metro East area that had occurred about two years earlier.

Charlton subsequently told Korunka in an interview that while imprisoned at Graham, he had known the defendant and that the defendant had told him that he had murdered someone in East St. Louis. Charlton relayed the information to the police because he believed that "[p]eople should not kill people." He was not compensated in any way for his cooperation with the police. The facts Charlton related closely coincided with what the officers already knew of the unsolved murder. Korunka and Fairview Heights police officer Stephen Walters, assigned to the case from the detective unit, believed that

only the perpetrator would know the facts of the murder in the detail that Charlton related.

On March 30, 1986, the officers were notified that the defendant was incarcerated in the Montgomery County jail awaiting trial for an unrelated charge of aggravated battery. Walters and his supervisors conferred and decided for various reasons that placing an eavesdropping device in the cell with the defendant would be impractical. The police then decided to elicit the information from the defendant through a ruse involving the placement of an undercover agent, posing as an escaped convict, with the defendant in the cellblock.

On March 31, 1986, Walters, Charlton, and the undercover officer, John Parisi, a narcotics agent for the Metropolitan Enforcement Group of Southwestern Illinois, met at the Fairview Heights police department. Walters told both Parisi and Charlton to refrain from questioning the defendant directly about the murder but to report anything the defendant stated concerning it. The group decided that Parisi and Charlton would inform the defendant that they had escaped from a work-release program at the Graham Correctional Center and had made their way to Montgomery County in order to join with the defendant and to take him with them to California. The cover story for their presence in the jail was that while they were in Montgomery County, they ran out of money and were arrested in the process of a burglary. Parisi, assuming the alias of "Vito Bianco" and wearing motorcycle garb, and Charlton were then photographed and placed in the cellblock.

Both Parisi and Charlton later testified that after entering the cellblock, Charlton spoke with the defendant briefly and introduced Parisi. Parisi told the defendant that he and Charlton had escaped from incarceration. Parisi stated that he "wasn't going to do any more time" and suggested that the three of them escape from the jail where they were currently being held. The defendant replied that the Montgomery County jail was "rinky-dink" and that he could arrange to have someone smuggle in a gun. The three decided to meet later that evening after the other inmates went to sleep.

At the meeting later that evening, Parisi initiated the defendant's narration of the crime by asking him whether he had ever "done someone." The defendant then recounted the events of the alleged murder in detail. At 7 the next morning, police officer Walters learned that Parisi had signaled the guard that the defendant had spoken about the murder. Once the guards had released him and Charlton from the jail, Parisi advised Charlton to make notes of what the defendant had said. The police subsequently brought the defend-

ant to the courthouse and placed him under arrest for murder. Walters warned the defendant pursuant to *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, and the defendant requested an attorney. Parisi, of course, had not given the defendant *Miranda* warnings prior to eliciting the information from him in the jail.

The trial court, on April 8, 1987, granted the defendant's motion to suppress the statements made to Parisi and Charlton. The court found that Parisi and Charlton were agents of the State who had failed to give the defendant *Miranda* warnings before conducting a custodial questioning. The State appeals.

The State contends that the trial court erred by suppressing the defendant's statements to an undercover agent where the conversation had not occurred in the sort of coercive environment in which the Supreme Court held that the police must give *Miranda* warnings. The State argues that the conversation among the defendant, Charlton, and Parisi was not interrogation, and that the conversation with the defendant, prior to the giving of *Miranda* warnings, thus offended neither the fifth amendment nor the sixth amendment of the United States Constitution.

The State contends that the trial court's determination to suppress the defendant's statements based on the Supreme Court's holding in *Miranda* was in error because Parisi and Charlton did not coerce the defendant to relate the details of the crime. The State argues that Parisi and Charlton merely engaged the defendant in friendly conversation, leading him to believe that they were compeers ready to join him in a jailbreak, and that the defendant was under no compulsion to answer the questions posed. The State asserts that Parisi's status as an agent of the prosecution did not undermine the defendant's will to resist answering the questions because the defendant believed that Parisi was a "biker," rather than an undercover agent. The State contends that the defendant made his statements freely, voluntarily, and without compulsion and that the defendant was not placed in a "police-dominated" atmosphere because the defendant was familiar with the jail and was thus insulated from the police department's use of psychological intimidation.

■■ ■ In *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, the Supreme Court held that a prosecutor may not use an exculpatory or inculpatory statement arising from a custodial interrogation of a defendant unless the prosecutor can demonstrate the use of procedural safeguards effective to secure the defendant's privilege against incriminating himself. (*Miranda*, 384 U.S. at

444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612.) The *Miranda* decision applies to statements made pursuant to a "custodial interrogation," which the Court defined as "when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning." (*Miranda*, 384 U.S. at 478, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.) The *Miranda* decision requires the agent of the prosecution to warn the defendant prior to questioning that: (1) he has the right to remain silent; (2) anything he says can be used against him in a court of law; (3) he has the right to have an attorney present; and (4) if he cannot afford an attorney one will be appointed for him prior to questioning if he so desires. *Miranda*, 384 U.S. at 479, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.

The *Miranda* opinion applies only to "custodial" interrogations. In the case *sub judice* we note that, although the defendant was incarcerated on other charges at the time Parisi and Charlton elicited the incriminating statements, he was "in custody" for purposes of *Miranda*. As the Supreme Court concluded in *Mathis v. United States* (1968), 391 U.S. 1, 20 L. Ed. 2d 381, 88 S. Ct. 1503, nothing in the *Miranda* opinion makes the necessity for warnings dependent on the particular reason why the defendant is in custody. (*Mathis*, 391 U.S. at 4-5, 20 L. Ed. 2d at 385, 88 S. Ct. at 1505.) Thus *Miranda* applies even when the purpose of the custody is unrelated to the purpose of the interrogation, as in the instant case.

■ *Miranda* also applies when the questioning is indirect. In *Rhode Island v. Innis* (1980), 446 U.S. 291, 64 L. Ed. 2d 297, 100 S. Ct. 1682, the Supreme Court held that prosecutorial interrogations necessitating *Miranda* warnings need not amount to actual questioning. The Court found that the term "interrogation" as used in *Miranda* "refers not only to express questioning, but also to any words or actions on the part of the police (other than those normally attendant to arrest and custody) that the police should know are reasonably likely to elicit an incriminating response from the suspect." (*Innis*, 446 U.S. at 301, 64 L. Ed. 2d at 308, 100 S. Ct. at 1689-90; see also *People v. Scott* (1987), 159 Ill. App. 3d 459, 463-64, 512 N.E.2d 836, 838-39.) Thus, the State's argument that Parisi's conversation with the defendant was not questioning for the purposes of *Miranda* fails, because the placement of Parisi in the cellblock with the defendant, and Parisi's inquiry whether the defendant had ever "done someone," were words and actions reasonably likely to elicit an incriminating response from the defendant.

While no cases in Illinois have directly addressed the issue of whether an undercover agent's interrogation of a defendant requires

warnings pursuant to *Miranda*, other jurisdictions have applied the requirements of *Miranda* in cases involving an informant's custodial questioning of a defendant. In *Holyfield v. State* (1985), 101 Nev. 793, 711 P.2d 834, the Nevada Supreme Court held that the prosecution's failure to warn a defendant pursuant to *Miranda* renders an informant's surreptitious custodial questioning inadmissible. In *Holyfield*, two men robbed a credit union in Reno. The police subsequently arrested the defendant on an unrelated charge of robbery. The police warned the defendant pursuant to *Miranda* and questioned him about the robbery of the credit union. The defendant denied any involvement in the robbery. The police then enlisted the aid of an informant and placed the informant in the cell with the defendant to obtain information about the robbery. The informant subsequently related to the police that the defendant had admitted the robbery, and told the police his version of the statements made by the defendant. At a hearing on the defendant's motion to suppress the statements, the court ruled that the statements were admissible. The jury found the defendant guilty of the robbery, and the defendant appealed.

The *Holyfield* court agreed with the defendant's assertion that the admission of the evidence violated his fifth amendment constitutional right against self-incrimination. The court held that the fact that the agent of the police had not advised the defendant of his *Miranda* rights prior to the questioning created a situation where the police ploys subverted "constitutional guarantees which are designed to assure fairness and integrity in the truth-seeking process." *Holyfield*, 101 Nev. at 806, 711 P.2d at 842.

Decisions from other jurisdictions also support the proposition that the Supreme Court's *Miranda* decision covers an informant's custodial elicitation of information from a defendant. In a Nebraska case (*State v. Fuller* (1979), 203 Neb. 233, 278 N.W.2d 756, *rehearing overruled* (1979), 204 Neb. 196, 281 N.W.2d 749), the police suspected the defendant, incarcerated on unrelated charges, of murdering a fellow prisoner. One of the defendant's cellmates agreed to cooperate with the authorities by attempting to induce the defendant to discuss his role in the inmate's death. The defendant allegedly made incriminating statements to the cellmate. The cellmate's testimony regarding the defendant's incriminating statements was admitted at trial, and the jury found the defendant guilty of murder. On appeal, the Nebraska Supreme Court held that the testimony regarding the defendant's statements was inadmissible. "Since [the cellmate] was acting as a police agent, this was custodial interrogation and the defendant was entitled to the warnings required by *Miranda v. Arizona*, 384 U.S.

436, 86 S. Ct. 1602, 16 L. Ed. 2d 694." *Fuller*, 204 Neb. at 196, 281 N.W.2d at 749.

In *State v. Travis* (1976), 116 R.I. 678, 360 A.2d 548, a case with facts similar to those of the instant case, the police arrested the defendant for robbery. The police then placed an undercover officer into the cell with the defendant. The undercover officer had very long hair, a long beard, and wore "mod-type" clothing. The officer later claimed that, after he conversed with the suspect to put him at ease, the suspect made several statements amounting to a confession of the robbery. The defendant brought a motion to suppress the undercover officer's testimony but the trial judge denied the motion. The suspect was charged, convicted, and sentenced to life imprisonment. As in the instant case, the State argued that the defendant's statements had not been compelled but, rather, had been volunteered freely and were, therefore, admissible into evidence. In reversing the conviction, the Rhode Island Supreme Court held, as we do, that the ruse employed by the police violated the defendant's rights under the fifth amendment of the Constitution. *Travis*, 116 R.I. at 682-83, 360 A.2d at 551.

■ We reject the State's contention that *Miranda* applies only in those situations where a figure of authority directly interrogates the accused. There is no authority in these circumstances for the police to do indirectly what they may not do directly. Underlying the rationale of the *Miranda* decision is the conviction that a warning before questioning is essential in overcoming the pressures of interrogation and in aiding the truth-finding function. The warning ensures that the defendant knows that he is free to exercise his constitutional privilege against self-incrimination. (*Miranda*, 384 U.S. at 469, 16 L. Ed. 2d at 720, 86 S. Ct. at 1625.) The privilege is fulfilled only when the defendant is "guaranteed the right to remain silent unless he chooses to speak in the unfettered exercise of his own will." (*Miranda*, 384 U.S. at 460, 16 L. Ed. 2d at 715, 86 S. Ct. at 1620.) The defendant's fifth amendment constitutional privilege is thus fulfilled only when the agent of the prosecution warns the defendant of his rights pursuant to *Miranda* prior to custodial questioning. In the present case the defendant's statements were not given through a knowing and intelligent waiver of his rights, but were in fact the questionable product of an intentional subversion of those rights.

■ The procedural safeguards set forth by the Supreme Court in *Miranda* are the only established means to protect the defendant's constitutional right against self-incrimination, one of the central concepts of our American system of criminal jurisprudence. We cannot permit the police to subvert this important constitutional right by en-

gaging in surreptitious tactics as employed in this case. The judiciary must apply constitutional rights, even under new and perhaps difficult circumstances, or the "constitution would indeed be as easy of application as it would be deficient in efficacy and power. Its general principles would have little value, and be converted by precedent into impotent and lifeless formulas. Rights declared in words might be lost in reality." (*Weems v. United States* (1910), 217 U.S. 349, 373, 54 L. Ed. 793. 801, 30 S. Ct. 544, 551.) We cannot permit the police to subvert the defendant's fifth amendment right against self-incrimination by questioning the defendant, through informants and while he was in custody, without first warning him of his rights pursuant to *Miranda*. We would render the defendant's fifth amendment privilege wholly meaningless were we to do so.

Since we find that *Miranda* applies in this situation, we must also find that the failure to warn the defendant pursuant to *Miranda* renders the defendant's statements to Parisi and Charlton in the Montgomery County jail inadmissible. (*People v. Scott* (1987), 159 Ill. App. 3d 459, 464, 512 N.E.2d 836, 839.) Therefore, we affirm the determination of the circuit court of St. Clair County.

Affirmed.

CALVO and WELCH, JJ., concur.