THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. MICHAEL JOHNSON, Defendant-Appellee.—THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellant, v. DAVID W. CARTER, Defendant-Appellee.

Fourth District   Nos. 4—89—0181, 4—89—0182 cons.

Opinion filed May 17, 1990.

Donald D. Bernardi, State's Attorney, of Pontiac (Kenneth R. Boyle, Robert J. Biderman, and J.A.C. Knuppel, all of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People.

Daniel D. Yuhas and Gary R. Peterson, both of State Appellate Defender's Office, of Springfield, for appellees.

Neil F. Hartigan, Attorney General, of Springfield (Robert J. Ruiz, Solicitor General, and Terence M. Madsen and Sally L. Dilgart, Assistant Attorneys General, of Chicago, of counsel), for *amicus curiae.*

PRESIDING JUSTICE KNECHT delivered the opinion of the court:

This consolidated appeal involves the application of *Miranda v. Arizona* (1966), 384 U.S. 436, 16 L. Ed. 2d 694, 86 S. Ct. 1602, to correctional center inmates who make admissions to an informant.

This case involves the murder of Robert Taylor, the superintendent at Pontiac Correctional Center in Pontiac, Illinois. In the course of that murder investigation, the prosecution obtained an eavesdrop order to tape conversations between the inmate suspects and an informant visiting them at the prison. The suspects ultimately implicated themselves in a gang conspiracy to solicit the murder of Taylor.

The suspects, David W. Carter and Michael Johnson, were indicted on multiple counts of conspiracy (Ill. Rev. Stat. 1987, ch. 38, par. 8—2(a)), solicitation (Ill. Rev. Stat. 1987, ch. 38, par. 8—1(a)), and murder (first degree) (Ill. Rev. Stat. 1987, ch. 38, pars. 9—1(a)(1), (a)(2)). Prior to trial, Carter and Johnson filed motions to suppress the tapes of their respective conversations with the inmate informant. At the consolidated suppression hearing, the defense argued the admission of these conversations, taped in the absence of *Miranda* warnings, would violate the constitutional privilege against compulsory self-incrimination. (U.S. Const., amend. V.) The Livingston County circuit court ordered suppression of the tapes in accordance with the dictates of *People v. Perkins* (1988), 176 Ill. App. 3d 443, 531 N.E.2d 141, *appeal denied* (1989), 125 Ill. 2d 572. The prosecution now appeals from the suppression orders of the circuit court. 107 Ill. 2d R. 604(a)(1).

The sole issue on review is whether the circuit court erred in suppressing the tapes of incriminating conversations between the inmate suspects and the inmate informant. We reverse the suppression orders of the circuit court.

On appeal, the prosecution argues the inmate suspects were not entitled to *Miranda* warnings because they were not subjected to a custodial interrogation when their conversations with the inmate informant were taped at the prison. The prosecution further argues *Perkins* is an aberrational application of the *Miranda* decision.

In *Perkins*, the police obtained incriminating statements via conversations between the inmate defendant, an inmate informant, *and* an undercover agent at a jail. At the ensuing suppression hearing, the circuit court ruled the conversation constituted custodial interrogation for the protection purposes of *Miranda*. The Fifth District Appellate Court affirmed the suppression order of the circuit court on review.

■ The circuit court's order here is consistent with *Perkins* but we decline to follow that decision because we believe it was wrongly decided. Inmate suspects who choose to meet with and discuss their criminal activity with an informant are not subject to the coercive custodial environment accompanying an interrogation which was the reason for *Miranda*. See Kamisar, *"Brewer v. Williams, Massiah,* and *Miranda*: What Is 'Interrogation'? When Does It Matter?"* 67 Geo. L.J. 1, 63-64 (1978) (hereinafter Kamisar).

■ *Miranda* warnings must precede custodial interrogation. (*Miranda,* 384 U.S. at 444, 16 L. Ed. 2d at 706-07, 86 S. Ct. at 1612.) Absent waiver of such warnings, all incriminating conversations obtained through interrogation will be inadmissible as evidence at trial. (*Miranda,* 384 U.S. at 479, 16 L. Ed. 2d at 726, 86 S. Ct. at 1630.) The rationale of *Miranda* is that the coercion inherent in the custodial interrogation environment would "subjugate the individual to the will of his examiner," thereby undermining the constitutional privilege against compulsory self-incrimination. *Miranda,* 384 U.S. at 457, 16 L. Ed. 2d at 714, 86 S. Ct. at 1619.

■ Custodial interrogation means "questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way." (*Miranda,* 384 U.S. at 444, 16 L. Ed. 2d at 706, 86 S. Ct. at 1612.) The inmate suspects here, incarcerated on unrelated charges, were already in custody in the literal sense. (See *Mathis v. United States* (1968), 391 U.S. 1, 20 L. Ed. 2d 381, 88 S. Ct. 1503.) We do not believe, however, a suspect is automatically entitled to *Miranda* warnings by virtue of his inmate status. (See *Cervantes v. Walker* (9th Cir. 1978), 589 F.2d 424, 427; *United States v. Conley* (4th Cir. 1985), 779 F.2d 970, 972-73, *cert. denied* (1986), 479 U.S. 830, 93 L. Ed. 2d 61, 107 S. Ct. 63.) To the contrary, custody in the prison setting "necessarily implies a change in the surroundings of the [inmate] which results in an added imposition on his freedom of movement." *Cervantes,* 589 F.2d at 428.

At the time of their admissions, the inmates were visiting with the informant in a large, open visiting room. Their freedom of movement was greater than when they were in their living units. Their visitor, an informant, was not an overbearing examiner who used the environment to subjugate their will to his own. Their visitor was an individual they chose to place on their visitor's list and chose to accept a visit from.

■ The inmates cannot attribute their mistaken belief as to the true role of the informant to any kind of coercion under the circum-

stances here. (See Kamisar, 67 Geo. L.J. at 65.) The rationale underlying *Miranda* is that a warning will help overcome the pressures of interrogation. There were no pressures here. The informant had successfully concealed his status so there was no pressure to answer his questions or converse with him. The location of the conversation was the same place any inmate would meet any visitor so the environment added no pressure. The inmates knew the investigation had focused on them as suspects following their transfer from the general population into a segregation unit on death row at the prison. The inmates nevertheless agreed to visit with the informant based solely on the strength of their common gang affiliation. Although they could have terminated that visit at any time, they instead entered into a conversation about the crime with the informant, unwittingly implicating themselves in a gang conspiracy to solicit the murder of Taylor. The inmates thus voluntarily accepted the attendant risk the informant would reveal their wrongdoing. See *Hoffa v. United States* (1966), 385 U.S. 293, 302-03, 17 L. Ed. 2d 374, 382-83, 87 S. Ct. 408, 413-14; see also *United States v. White* (1971), 401 U.S. 745, 751-52, 28 L. Ed. 2d 453, 458-59, 91 S. Ct. 1122, 1125-26.

The circuit court is presumed to have correctly ruled on a motion to suppress, but in this case, we find there was no custodial interrogation and the protection of *Miranda* did not apply. Under these circumstances, the circuit court erred in suppressing the tapes of incriminating conversations between the inmate suspects and the inmate informant.

The order of the Livingston County circuit court is reversed.

Reversed.

STEIGMANN and McCULLOUGH, JJ., concur.