STATE of Tennessee, Appellee,

v.

Ricky Lee WEBB, Appellant.

Court of Criminal Appeals of Tennessee, at Jackson.

April 17, 1980.

William M. Leech, Jr., Atty. Gen., Charles L. Lewis, Asst. Atty. Gen., Nashville, A. H. Schoonover, Clayburn Peeples, Asst. Dist. Attys. Gen., Trenton, for appellee.

Fred Collins, Benjamin M. Huey, II, Milan, for appellant.

## OPINION

WALKER, Presiding Judge.

The appellant, Ricky Lee Webb, was charged in separate indictments returned by the Gibson County grand jury with the first degree murder and rape of Charlotte

Blurton. He was tried October 23–25, 1978, and found guilty of both charges. The jury set his punishment at life imprisonment for the murder and 99 years' and one day imprisonment for the rape. The trial judge ordered that the sentences be served consecutively. Webb now appeals to this court.

The state's evidence showed that Charlotte Blurton was found dead by her husband about 3:45 p.m. on September 22, 1976. Her body was lying on a bed in their Gibson County home stripped of clothing from the waist down. Their 18 month old child was lying on the bed beside his mother. Mrs. Blurton's death was caused by multiple gunshot wounds fired from a small caliber weapon, and .25 caliber shell casings were found near the body. Sperm was found in the vaginal oriface indicating recent sexual intercourse. She was last seen alive around noon.

Carl Ray Webb, the appellant's nephew, was arrested and charged with the offense. On the day after the homicide, he showed the police where he had hidden the murder weapon and a .25 caliber pistol was recovered. Subsequently, Carl Webb entered a guilty plea to murder in the second degree of Mrs. Blurton and was sentenced to imprisonment for 50 years.

At trial, Carl Webb testified that the appellant had asked him to obtain a gun and that he had stolen the .25 automatic from Adam Spinks.

He further testified that he and the appellant decided to walk into Gibson on the day in question. As they were passing the victim's home, the appellant said, "Let's go off in there." They knocked on the door and when Mrs. Blurton appeared the appellant presented the gun and they both entered the house. First he and then the appellant raped Mrs. Blurton, after which the appellant shot Mrs. Blurton several times. The two then left the house and Carl threw the gun into a bulldozer pile.

Other testimony placed the appellant in Carl Ray Webb's company about noon on the day in question.

Prentis Rogers, an undercover agent working in cooperation with the local authorities, was placed in the same jail cell with the appellant and Carl Webb. Rogers was placed in the cell in order to obtain information concerning the homicide. The trial judge would not allow into evidence any testimony concerning what was said to Rogers in the jail cell. However, the trial judge did allow Rogers to testify about the conversation he overheard between the appellant and Carl Webb.

Rogers testified that after a heated argument the appellant stated to Carl Webb, "Yeah, man, I know I got you in a lot of trouble. I'm sorry I instigated the whole thing."

Samuel Anders, who was also incarcerated with the appellant, but who was not working in cooperation with the authorities, testified that the appellant had told him that he had gone to the victim's home with Carl and that they left the home together, but Carl had murdered Mrs. Blurton.

Howard Gillespie, also a fellow jail inmate with the appellant, testified that the appellant told him that he knew the victim and knew who committed the crime.

The appellant testified denying any participation in the crime and presented several witnesses in an attempt to establish an alibi.

█ In the appellant's initial issue presented for review, he claims that the trial judge erred in allowing into evidence the testimony of undercover agent Rogers concerning the conversation he had with Carl Ray Webb in jail. The appellant contends that this evidence was obtained in violation of his sixth amendment right to counsel as formulated in *Massiah v. United States*, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964), and *Brewer v. Williams*, 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977). The appellant also contends that absent this evidence there was insufficient evidence to support the verdict and that his motion for judgment of acquittal should have been granted in that there was insufficient corroboration of his accomplice's testimony.

As stated in *Brewer*, 430 U.S. at 401, 97 S.Ct. at 1240, 51 L.Ed.2d at 438, "(T)he clear rule of *Massiah* is that once adversary proceedings have commenced against an individual, he has a right to legal representation when the government interrogates him."

In the present case there is no question that adversarial proceedings had commenced against the appellant in that an arrest warrant charging him with the offense had been issued. The issue in this case is whether the action of the government constituted an "interrogation." It is clear that Rogers was placed in the cell with the appellant for the purpose of obtaining information concerning the homicide. Likewise, Carl Webb was placed in the same cell with the appellant in hope that an incriminating conversation would take place. It did. The incriminating statements were deliberately elicited by action of the state. This action amounted to an interrogation. We agree with the appellant that his right to counsel was subverted. In these circumstances the officers did indirectly what they could not do directly. The trial judge erred in allowing Rogers' testimony into evidence. Cf. *State v. Berry*, 592 S.W.2d 553 (Tenn.1980). This error cannot be deemed harmless.

However, we are unable to agree with the appellant's conclusion that absent the inadmissible evidence there was insufficient evidence to corroborate Carl Webb's testimony.

Slight circumstances may be sufficient to furnish the necessary corroboration of an accomplice's testimony. *Bolton v. State*, 591 S.W.2d 446 (Tenn.Cr.App.1979). As previously mentioned, Samuel Anders testified that although the appellant denied that he had committed the murder the appellant had admitted to him that he went to the victim's home with Carl Webb and that they left together. The appellant also stated to Anders that Carl Webb did the shooting while he was in a different part of the house. The appellant's presence in the victim's home while she was murdered is sufficient to corroborate Carl Webb's testimony.

Likewise, absent Rogers' testimony, we still conclude that there was sufficient evidence to justify a rational trier of fact in finding guilt beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Nor was error committed in denying the motion for judgment of acquittal. *State v. Cabbage*, 571 S.W.2d 832 (Tenn.1978).

Although the case must be reversed and remanded for a new trial, we have examined all other issues and find them to be without merit.

In the appellant's next issue presented for review, he contends that the trial judge erred in denying his motion challenging the composition of the petit jury panel on the ground that blacks were systematically and discriminatorily excluded.

The appellant presented evidence that 88 people constituted the jury panel. The racial composition of the jury panel was not shown. The only evidence concerning the racial composition of the jury panel was that at least 12 people were black. No other evidence of discrimination in the selection of the jury panel was shown. Furthermore, no census figures reflecting the black-white ratio of that part of Gibson County served by the Humboldt Law Court were presented. The appellant has failed to make out a prima facie case of discrimination. *Castaneda v. Partida*, 430 U.S. 482, 97 S.Ct. 1272, 51 L.Ed.2d 498 (1977). This issue is without merit.

Next, the appellant claims that the trial judge erred in admitting into evidence over his objection a color photograph of the victim which was taken shortly after she was found. The photograph depicts the victim with no clothes on from the waist down and a considerable amount of blood. However, the picture was taken from a considerable distance and although unpleasant we cannot say that its prejudicial effect outweighed its probative value. *State v. Banks*, 564 S.W.2d 947 (Tenn.1978).

Next, the appellant claims that the trial judge erred in refusing to charge the jury his special request concerning the presumption of innocence. However, the trial judge adequately covered this matter in his

general charge. It is not error to refuse a special request where the charge as given fully and fairly states the applicable law. *Edwards v. State*, 540 S.W.2d 641 (Tenn. 1976).

Next, the appellant claims that his sentence of 99 years and one day for the rape conviction was excessive and exhibited passion and capriciousness on the part of the jury. However, the sentence was well within the range of punishment authorized by statute. A verdict which falls within the range permitted by statute cannot be considered excessive. *Williams v. State*, 491 S.W.2d 862 (Tenn.Cr.App.1972). Nor can it be said to show passion, caprice or prejudice by the jury. *Carroll v. State*, 212 Tenn. 464, 370 S.W.2d 523 (1963). This issue is without merit.

In the appellant's last issue presented for review, he contends that the trial judge abused his discretion in ordering his sentences to be served consecutively. The trial judge found that the appellant was a dangerous offender. We agree. Therefore, we can find no abuse of discretion. *Gray v. State*, 538 S.W.2d 391 (Tenn. 1976).

Reversed and remanded for a new trial.

BYERS and CORNELIUS, JJ., concur.