**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Robert Lee BROWN, Defendant-Appellant.**

**No. 71–1436.**

United States Court of Appeals,
Tenth Circuit.

Sept. 20, 1972.

**494**

John W. Pattno, Cheyenne, Wyo., for defendant-appellant.

Jack Speight, Asst. U. S. Atty., Cheyenne, Wyo. (Richard V. Thomas, U. S. Atty., Tosh Suyematsu, Asst. U. S. Atty., Cheyenne, Wyo., with him on the brief), for plaintiff-appellee.

Before LEWIS, Chief Judge, DOYLE, Circuit Judge, and WINNER, District Judge.

LEWIS, Chief Judge.

The decision in this case has been delayed pending disposition by the Supreme Court of Milton v. Wainwright, 407 U.S. 371, 92 S.Ct. 2174, 33 L.Ed.2d 1. Although the factual backgrounds in

*Milton* and the case at bar are comparable, the decision in *Milton* did not reach the merits, the high court concluding that no more than harmless error was therein involved. We do not have any aspect of harmless error and therefore are not aided by *Milton*.

Defendant was convicted after trial to the court in the District of Wyoming of making a false and fictitious statement likely to deceive a gun dealer in the acquisition of a firearm in violation of 18 U.S.C. § 922(a)(6). He contends that his conviction is premised on evidence obtained as the result of an unlawful police interrogation. The subject evidence was properly objected to at trial after a pretrial motion to suppress had been denied.

At about 2:35 a. m. on March 12, 1971, seventeen-year-old Danny Byers, a friend of defendant, was questioned by Casper, Wyoming city police. Byers informed the officers that defendant, who had been previously convicted of a felony, was in possession of a pistol. An hour later defendant was arrested at a Casper motel and charged with registering at the motel under a false name, a violation of a municipal ordinance. He was taken into custody, given the proper *Miranda*[1] warnings, and indicated that he wanted to give no statement and did desire an attorney. He consented to a search of his motel room but the search produced nothing incriminating.

Notwithstanding defendant's clear indication that he did not wish to make a statement, at least three further attempts were directly made by Casper police to interrogate him. Although defendant made no statement, this police treatment was directly in contravention of the clear dictate of *Miranda*:

> If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease . . .; any statement taken after the person invokes his privilege cannot be other than the product of

1. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694.

compulsion, subtle or otherwise. 384 U.S. at 473, 474, 86 S.Ct. 1602, 1627.

The efforts of the police to obtain information from defendant through direct interrogatories having failed, the police then turned to Byers and "permitted" Byers to talk to defendant. The Captain of Police, testifying at the motion to suppress, described this event in his testimony:

Q (By Mr. Pattno) Did you take Danny Byers to see the defendant on the morning of the 12th?

A I permitted him to go see him.

Q Did you talk to Danny Byers before you permitted him to go see him?

A Yes, sir.

Q What did you say to him?

A I told him if he could find out where the gun was to ask him.

Q You asked Danny Byers to do that?

A Yes, sir.

Q And this was after you gave him the Miranda warning?

A Uh-huh.

Q "Yes," is that what your answer was?

A Yes.

Q Thereafter did Danny Byers find out anything for you?

A Yes, sir.

Q What did he find out?

A He told me where the gun was.

■ Byers and defendant also testified at the hearing. Byers acknowledged that he had been told by police officers to find out where the gun was, that he had done so, and had given the information to the police. He stated that he did not ask where the gun was but was requested by defendant to get the gun and keep it until defendant got out. Defendant testified that Byers did ask him where the gun was and said he

would get it and hide it for him. We do not pause to discuss any purported significance as to whether Byers obtained the information by direct question or otherwise. Form does not control the substance in determining the legality of interrogation and very often subtlety is more effective than other methods of coercion.

Having found the gun in an old and unoccupied house owned by the Mountain States Telephone Company, Casper police promptly informed federal authorities.[2] The gun registration quickly led to defendant and the proof of a violation of the cited statute by defendant.

■ It would seem indisputable that defendant's original arrest, the persistent police interrogation, followed by the police-inspired interrogation by Byers, the gun's recovery leading to information of defendant's unlawful purchase of the weapon, and his final conviction present a continuing picture of conduct in complete frustration of the dictates of *Miranda* and side effects contrary to the teachings of Massiah v. United States, 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246. This is not a case of information reaching police through the misplaced confidence of defendant. *See* United States v. Mitchell, 7 Cir., 417 F.2d 1246, 1249. It is a case where police-initiated interrogation continued when Bown had the right to remain silent and have counsel present. Although Byers was appellant's friend, he was functioning as an instrument of the police. He was doing that which the police themselves could not do. This is proscribed by *Miranda*. The evidence obtained as a result of that interrogation should not have been admitted at trial, Sullins v. United States, 10 Cir., 389 F.2d 985, and the entire basis for conviction was thus tainted. The judgment must be and is

Reversed.

2. Federal authorities were also told ". . . we will be unable to keep him here very long, as he has absolutely noth- ing to hold him in this town, or this part of the country."