UNITED STATES of America, Plaintiff,

v.

Patricia Campbell HEARST, Defendant.

Cr. No. 74–364–OJC.

United States District Court, N. D. California.

Feb. 17, 1976.

James L. Browning, Jr., U. S. Atty., F. Steele Langford, David P. Bancroft, Edward P. Davis, Jr., Asst. U. S. Attys., San Francisco, Cal., for the United States.

F. Lee Bailey, J. Albert Johnson, Boston, Mass., Thomas J. May, Brookline, Mass., for defense.

ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS EVIDENCE OF INCRIMINATING STATEMENTS

OLIVER J. CARTER, Chief Judge.

The defendant requested a hearing outside the presence of the jury for a determination by the Court of whether

certain incriminating statements made by her subsequent to the time of the offense here charged were voluntary or the product of coercion or duress, irrespective of their truth or falsity. The Court granted such a hearing pursuant to its obligation as defined in *Rogers v. Richmond*, 365 U.S. 534, 81 S.Ct. 735, 5 L.Ed.2d 760 (1961), and *Jackson v. Denno*, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964). This Order constitutes the Court's findings with respect to the question of voluntariness raised in the hearing.

The first of the statements in issue is found on a tape recording of the defendant's voice made on or about April 18, 1974. The speaker identifies herself as "Tania", the name allegedly adopted by the defendant while in the company of her Symbionese Liberation Army captors. If given credence, the statement made on this tape recording would constitute an admission by the defendant of her willing participation in the robbery of the Hibernia Bank on April 15, 1974, for which she is presently standing trial.

The second statement or series of statements were uttered by the defendant on May 16, 1974, to or in the presence of one Thomas Matthews of Lynwood, California, who testified to their contents at the voluntariness hearing. These statements also implicate the defendant as a voluntary participant in the bank robbery.

There has been no allegation, nor any evidence adduced, that the statements in issue were obtained through coercive tactics employed at the behest or suggestion of the Government or any of its agents. In fact, it is simply beyond dispute that the Government was not involved in any fashion in the defendant's making such statements. The defendant's position, then, is that any incriminating statements made by her were the product of coercion or duress applied by members of the SLA, including those who participated with her in the bank robbery. In response the Government argues initially that the coercion issue is not properly presented to the Court in a voluntariness hearing under *Rogers v. Richmond* and *Jackson v. Denno, supra*, where it is not alleged that the Government has assisted, directly or indirectly, in obtaining incriminating statements from the defendant.

A number of cases have held that the safeguards of the Fifth Amendment against self-incrimination, as enforced by the exclusionary rule, extend so far as to render inadmissible against a defendant in a criminal trial incriminating statements involuntarily made by that defendant to a private individual. *E. g., United States v. Brown*, 466 F.2d 493 (10th Cir. 1972); *United States v. Robinson*, 142 U.S.App.D.C. 43, 439 F.2d 553 (1970); *Evalt v. United States*, 359 F.2d 534 (9th Cir. 1966). In most of these cases, however, including each of those just cited, the coercion was administered by persons who, although private citizens, either acted upon the instigation of law enforcement agents or were so closely allied with public law enforcement agencies in their individual functions as to have become for practical purposes proxies for the Government.

The Supreme Court has not addressed the precise question whether a confession or admission of guilt wrenched involuntarily from an accused person by private individuals acting on their own behalf must be denied admission into evidence for violation of the accused's rights under the Fifth Amendment. Arguably, the Court's position on this issue is implicit in an early case, *Bram v. United States*, 168 U.S. 532, 18 S.Ct. 183, 42 L.Ed. 568 (1897), wherein it is intimated, in dictum, that coerced confessions, "whether made upon an official examination or in discourse with private persons," are not admissible evidence. *Id.* at 547, 18 S.Ct. at 188, 42 L.Ed. at 575, quoting *Hawkins' Pleas of the Crown*, ch. 46, sec. 3 (6th ed. 1787).

In two recent state court opinions, however, the question of private coercion unattended by state involvement has been considered, and evidence so obtained ruled inadmissible. *People v. Haydel*, 12 Cal.3d 190, 115 Cal.Rptr. 394, 524 P.2d

866 (1974); *Commonwealth v. Mahnke,* Mass., 335 N.E.2d 660 (1975). In *Mahnke* the defendant had been kidnapped and terrorized by a band of local citizens, who forced him to confess to the murder of a young girl in the community. After reviewing state and federal authorities on the issue of coerced confessions, the Massachusetts court said:

> Underlying the above-cited decisions . . . is the fundamental recognition that a statement obtained through coercion and introduced at trial is every bit as offensive to civilized standards of adjudication when the coercion flows from private hands as when official depredations elicit a confession. Statements extracted by a howling lynch mob or a lawless private pack of vigilantes from a terrorized, pliable suspect are repugnant to due process mandates of fundamental fairness and protection against compulsory self-incrimination. (335 N.E.2d at 672).

This Court finds the reasoning behind the above-quoted statement compelling, particularly in light of the Fifth Amendment's purpose of discouraging *all* attempts by the state to advantage itself in criminal prosecutions at the expense of the accused's fundamental right to remain silent and refuse to incriminate himself in the face of any would-be interrogator, private or official. See *United States v. Tarlowski,* 305 F.Supp. 112, 118–19 (E.D.N.Y.1969).

■ Having concluded, then, that the statements made by the defendant in this case *are* subject to suppression under a Constitutional claim of involuntariness, it is the Court's duty next to decide whether such statements *in fact* were made involuntarily. To make such a determination, the Court must examine all of the attendant circumstances, *Haynes v. Washington,* 373 U.S. 503, 513–14 n.

10, 83 S.Ct. 1336, 1342–1344, 10 L.Ed.2d 513, 520–521 (1963), and cases cited; if the statements or confessions are to be admitted into evidence at trial, the Court must be satisfied by a *preponderance of the evidence* adduced at the hearing that they were made voluntarily, *Lego v. Twomey,* 404 U.S. 477, 92 S.Ct. 619, 30 L.Ed.2d 618 (1972); *United States v. Cluchette,* 465 F.2d 749, 754 (9th Cir. 1972).

■ Initially the Court has determined that the defendant's version of the facts, if true, "would require the conclusion that [her] confession was involuntary." *Procunier v. Atchley,* 400 U.S. 446, 451, 91 S.Ct. 485, 488, 27 L.Ed.2d 524, 529 (1971). By a preponderance of the evidence, however, the Court finds that the Government has carried its burden[1] of showing that the defendant's statements —written, tape recorded, and made orally to Tom Matthews—were voluntary.

It should be stated at the outset that the factual question presented here is a close one, involving, as it does, the weighing of testimony offered by both parties which is largely uncontradicted but from which countervailing inferences may be drawn. The Court's finding is simply that when the testimony of the defendant is balanced against that of the Government's key witnesses on this matter, Tom Matthews and Anthony Shepard, neither of whom had any apparent motive for failing to tell the truth, it appears more likely than not that the statements in issue were voluntary. The jury, of course, will be instructed to disregard any "confession" or other incriminating statements made by the defendant unless they find such statements to be voluntary *beyond a reasonable doubt.* This instruction was given approval by the Supreme Court in *Jackson v. Denno, supra.*

---

1. The Government, in its closing argument, has suggested that the burden of proof in this instance should rest with the defendant, since the statements obtained were not tainted by Government involvement. A consideration of this novel argument is unnecessary in view of the Court's finding of voluntariness by a preponderance of the evidence. Suffice it to say that neither the Government nor the Court has been able to unearth any authority for the defendant's ever having to bear the burden of proof in a voluntariness hearing.

Turning to the evidence presented at the hearing, the defendant testified that although it was her own voice recorded on the April 18th tape that implicated her as a willing participant in the bank robbery, both the substance of the message and the words used were supplied by Angela Atwood, one of her captors. Just as the SLA forced her to make this tape recording, the defendant testified, so did their power over her, as later exercised by Bill and Emily Harris, compel her to boast of her accomplishments as a bank robber to Tom Matthews. Matthews testified, however, that the defendant "matter-of-factly," and without apparent compulsion or suggestion by either of the Harrises, described her role in the robbery as a voluntary one performed in the company of individuals, once her feared kidnappers, but to whom she now referred as "comrades."

Perhaps more damaging to the defendant's credibility in this respect was the testimony of Anthony Shepard, the store clerk at Mel's Sporting Goods whose attempt to arrest Bill Harris for shoplifting was thwarted by a burst of gunfire, the responsibility for which was admitted by the defendant on cross-examination. That the defendant was armed and *alone* in the van from which the shots were fired that "rescued" the Harrises there is no dispute. Although Shepard's identification of the defendant as the unaccompanied person who later approached him carrying a weapon at the port arms position was less than positive, his certainty that this person was neither of the Harrises left little doubt that it was the defendant. None of these accounts is consistent with the defendant's claim that her acts and words subsequent to the bank robbery were the product of coercion.

In addition, on cross-examination the defendant's own testimony concerning the events subsequent to the May 17, 1974, "shootout" in Los Angeles evidenced the relative freedom she enjoyed while in the company of her erstwhile captors, the Harrises. Admitting the fact that during this time she once traveled from Pennsylvania to California unaccompanied by either of the Harrises but with one Jack Scott who was unarmed, the defendant's only answer to why she did not try to escape her new escort was, "Where would I have gone?" Such testimony does not satisfy the Court that the defendant was, as she claims to have been, a prisoner whose every move was made under the watchful eyes of her captors.

■ The defendant also argues that whatever relevance the events in Los Angeles on May 16, 1974, may have to the question of her guilt or innocence in the Hibernia Bank robbery is outweighed by the prejudicial effect such evidence of other crimes not the subject of this trial will have upon the jury should they be allowed to hear it. The Court finds this argument untenable under the circumstances of this case. Some of the evidence offered at the hearing tends to demonstrate the accused's possession of and proficiency with a weapon which *could* have been used in the commission of the bank robbery one month earlier. Such evidence is admissible where the crime charged involves the use of a dangerous weapon and there is other evidence that such a crime has been committed and the defendant has been identified as having been at or near the scene of that crime. *United States v. Walters*, 477 F.2d 386, 388–89 (9th Cir. 1973), *cert. denied*, 414 U.S. 1007, 94 S.Ct. 368, 38 L.Ed.2d 245 (1974).

Furthermore, it has long been the rule in this and other circuits that "[r]elevant evidence which tends to prove a material fact in the case on trial is admissible even though it incidentally shows that the accused committed another offense at a different time and place." *Fernandez v. United States*, 329 F.2d 899, 908 (9th Cir.), *cert. denied*, 379 U.S. 832, 85 S.Ct. 62, 13 L.Ed.2d 40 (1964). *See also United States v. Grammer*, 513 F.2d 673 (9th Cir. 1975); *Hill v. United States*, 363 F.2d 176 (5th Cir. 1966); *Anthony v. United States*, 256 F.2d 50, 53 (9th Cir. 1958). This rule has since been incorpo-

rated into the Federal Rules of Evidence, Rule 404(b), which provides that although evidence of other crimes or wrongful acts may not be admitted as evidence of the defendant's bad character or propensity to commit crimes, "[i]t may . . . be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

■ In this case, intent is the critical issue. All of the defendant's statements here in issue and all of the deeds which may incidentally implicate her in other crimes for which she is not now on trial are relevant to her intent at the time of the bank robbery. Each has considerable bearing on the question of coercion, which is the principal point of contention in this lawsuit. None is too remote in time from the offense charged to detract from its relevance. Almost by definition relevant evidence offered against one accused of a crime is prejudicial, but in this instance the Court finds the probative value of the evidence in question to outweigh its prejudicial effect.

■ There remains but one point to consider. Defense counsel, in his closing argument, suggested that the Court should rule evidence of the defendant's statements inadmissible because to do otherwise would only encourage other terrorist groups to emulate the SLA's tactics and force their kidnap victims to participate in "show" crimes, after which these victims would be further compelled to boast publicly of their participation and "conversion" to the terrorist faith. While there is no gainsaying this disturbing possibility, it is nevertheless the duty of this Court to decide the issues before it on the evidence and not on mere speculation. The adverse repercussions warned against by counsel for the defense have no evidentiary basis with respect to this hearing and are simply not germane to the issues the Court must decide.

Accordingly, based upon a review of the evidence heretofore offered in open court, it is the opinion of this Court that the Government has established by a preponderance of the evidence that the statements made by the defendant, following the occurrence of the bank robbery on April 15, 1974, whether by tape recording, or by oral communication, or by writing, were made voluntarily.

IT IS THEREFORE ORDERED that the defendant's motion to suppress such statements be, and the same is hereby, denied.