**360 A.2d 548.**

STATE *vs.* GENE EDWARD TRAVIS.

JULY 22, 1976.

PRESENT: Bevilacqua, C.J., Paolino, Joslin, Kelleher and Doris, JJ.

PAOLINO, J. This is an indictment charging the defendant with robbery and receiving stolen goods. This case is before us on the defendant's appeal from a judgment of conviction entered on May 21, 1975 and a sentence imposed on the same day.

The record discloses the following pertinent facts. On March 8, 1974, a Cumberland Farms store was robbed by a masked man carrying a pistol. Two store employees witnessed the robbery and later testified to the general physical appearance of the robber. One of the employees chased the robber down the street and saw him get into a blue automobile bearing license plate number SV375.

Early on the morning of March 9. 1974, the Warren police located this automobile, which had been stolen on March 7, 1974, and turned it over to their fingerprint expert who found defendant's fingerprints in the car.

On April 5, 1974, defendant was arrested and brought to the Warren police station where he was incarcerated in the detective division cellblock. He was given his *Miranda* warnings and told that the police were holding a warrant for his arrest on a charge of robbery. He was then asked if he would like to answer any questions. The defendant refused and stated that he wished to consult with an attorney. Shortly thereafter, Renald L. Langlois, an undercover police officer, entered defendant's cell in order to obtain information regarding the robbery. The undercover police officer had very long hair, a long beard and was dressed in "mod-type" clothing. He was handcuffed when he was brought to the cellblock and the handcuffs were removed when the undercover agent entered the cell. The undercover agent testified that he made conversation

with defendant in order to put him at ease, after which defendant made several statements which amounted to a confession that he committed the robbery at the Cumberland Farms store.

On April 15, 1974, defendant was indicted. On May 1, 1974, he was arraigned in the Superior Court, pleaded not guilty and was committed to the Adult Correctional Institutions for want of bail in the amount of $2,000 for robbery and receiving stolen goods. A motion to suppress the undercover agent's testimony was made and denied on March 18, 1975. This ruling is one of defendant's allegations of error.

On the same day trial of defendant started before a justice of the Superior Court and a jury. In the course of the undercover police officer's testimony, he stated that defendant mentioned that he was an escapee. Defense counsel immediately moved to pass the case. The trial justice gave a cautionary instruction and the jury was questioned to find out if any of them were prejudiced by the undercover officer's testimony; none indicated any inability to sit and the case proceeded. The defendant did not take the stand. The denial of the motion to pass is the second error claimed by defendant.

On March 20, 1975, the jury returned a verdict of guilty as charged on each count. The defendant's motion for a new trial was denied and on May 21, 1975, defendant was sentenced to the Adult Correctional Institutions for life on the robbery charge and for a term of 1 year on the charge of receiving stolen goods.

On May 23, 1975, defendant filed his notice of appeal and on June 4, 1975, he filed a motion to reduce sentence under Super. R. Crim. P. 35. A hearing on this motion was held on June 17, 1975 and at the conclusion of the hearing the trial justice denied the motion. The denial of this motion is defendant's third ground of appeal.

The defendant argues that the trial justice's ruling allowing into evidence the undercover officer's testimony violated his privilege against compulsory self-incrimination and his right to counsel. Because we agree with his first point we do not express an opinion on the right to counsel argument.

As we have stated in *State* v. *Lachapelle,* 112 R. I. 105, 108, 308 A.2d 467, 469 (1973): "* * * *Miranda* v. *Arizona,* 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), requires that when an accused informs the police of his desire to see an attorney, all further interrogation must cease * * *." *Miranda* also dictates that "[i]f the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." *Miranda* v. *Arizona, supra* at 473-74, 86 S.Ct. at 1627, 16 L.Ed.2d at 723.

The defendant in this case did both by telling the police that he wished to consult with an attorney and that he did not wish to say anything before seeing an attorney. In these circumstances the police were not permitted to ask defendant questions until after he had an opportunity to speak with counsel. The Warren police attempted to circumvent this stricture by asking undercover officer Langlois to masquerade as a fellow prisoner in order to "obtain further information with regard to the alleged crime."

The state argues that defendant's statements to Langlois were not compelled but, rather, they were volunteered freely and are, therefore, admissible into evidence.[1] The state cites only one case in support of this argument, *United States* v. *Fioravanti,* 412 F.2d 407 (3d Cir.), *cert.*

---

[1] "Volunteered statements of any kind are not barred by the Fifth Amendment and their admissibility is not affected by our holding today." *Miranda* v. *Arizona,* 384 U.S. 436. 478, 86 S.Ct. 1602, 1630, 16 L.Ed.2d 694, 726 (1966).

*denied* 396 U. S. 837, 90 S.Ct. 97, 24 L.Ed.2d 88 (1969), and our research has disclosed no other supporting authority.[2] In that case defendant was arrested along with a Secret Service undercover agent. The agent's true identity was not disclosed at that point in order to preserve his undercover status. Once in the United States Marshall's detention room the defendant made admissions to the undercover agent. These statements were made in the course of conversation and not in response to any questions from the agent. The United States Court of Appeals for the Third Circuit held that the admissions were admissible into evidence notwithstanding *Miranda* v. *Arizona, supra,* because the court concluded that the statements were volunteered. *United States* v. *Fioravanti, supra* at 413-14. We are unwilling to follow that holding, however, because the United States Court of Appeals postulated its conclusion upon the fact that the defendant's statements did not result from actual interrogation or questions posed to him. *Id.*

We attach no significance as to whether the agent in the cell asked questions of the duped defendant or not. *United States* v. *Brown,* 466 F.2d 493, 495 (10th Cir. 1972); *Hancock* v. *White,* 378 F.2d 479, 482 (1st Cir. 1967). To allow into evidence admissions made to an agent in the cell who made casual conversation with a defendant while carefully avoiding any questions regarding the specific crime under investigation, but to disallow that agent's testimony if he asked a question pertaining to a defendant's reason for being incarcerated, would be to play

---

[2]There is, however, authority to the effect that admissions made to fellow prisoners are voluntary and thus admissible in circumstances somewhat different from those of the present case. *See, e.q., United States* v. *Mitchell,* 417 F.2d 1246 (7th Cir. 1969). (Statements were admissible when they were made to a fellow inmate who, without having made prior arrangements, took his statement to the authorities.)

683

games with an individual's constitutional guarantees. This we will not do.

The mere presence of Langlois was an inducement to speak, and an inducement by a police officer. We see no significant difference between a uniformed police officer asking questions of defendant and Langlois' presence inside the cellblock with defendant. There was no knowing and intelligent waiver by defendant of his constitutional rights and one will not be presumed lightly. *Johnson* v. *Zerbst*, 304 U. S. 548, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938). The undercover agent's ruse amounted to proscribed "further interrogation."

The police were not allowed to interrogate defendant directly. There is no authority in these circumstances for the police to do indirectly what they may not do directly.[*] *United States* v. *Brown, supra* at 495; *State* v. *Smith,* 107 Ariz. 100, 104, 482 P.2d 863, 867 (1971); *State* v. *McCorgary,* 218 Kan. 358, 543 P.2d 952, 958 (1975). The police conduct here nullified defendant's privilege against compelled self-incrimination as guaranteed by the Constitution of Rhode Island, art. 1, §13, and the fifth amendment to the United States Constitution (made obligatory upon the States by the fourteenth amendment) as that privilege is defined by the dictates of *Miranda* v. *Arizona* and *State* v. *Lachapelle,* both *supra.* The evidence obtained as a result of this conduct should have been suppressed. Since defendant's statements to Langlois were a virtual confession, the court's ruling allowing the statements to be admitted into evidence constituted reversible error.

---

[*]Indirect policework techniques devised to evade rules designed to protect constitutional freedoms can result in the very same harms against which such rules guard. A dramatic example of unauthorized policework is *State* v. *Atkins,* 251 Ore. 485, 489, 446 P.2d 660, 662 (1968), where the defendant was placed in a cell with a much larger, violent prisoner who struck the defendant and threatened to kill him if he did not confess.

Our opinion regarding the compulsory self-incrimination aspect of defendant's appeal obviates discussion of his objection to the trial court's denial of his motion to pass the case. Likewise, we need not address the merits of his challenge to the life sentence which was imposed at the time judgment was entered.[4]

As announced in State v. Fortes, 114 R. I. 161, 173, 330 A.2d 404, 411 (1975), this court may review, in exceptional cases, sentences "* * * when the record points convincingly to the conclusion that the sentencing justice has without justification imposed a sentence which is grossly disparate from sentences generally imposed for similar offenses." Although we do not exercise that power of review in this case, there is one comment which appears appropriate. The defendant attached to his brief to this court a listing of the 1972, 1973 and 1974 Rhode Island indictments involving robbery which resulted in convictions. This appendix lists the name, docket number, and sentence of what appears to be all of the relevant indictments. He cites the average sentence for a robbery conviction in Rhode Island as slightly over 5 years incarceration with some longer sentences imposed where kidnapping or brutal sexual molestation accompanied the robbery. Although this list is somewhat illuminating, it is ultimately of no use to us

---

[4]There is some doubt whether the merits of such challenge are properly before us. The conviction was entered and defendant was sentenced on May 21, 1975. A notice of appeal was filed on May 23, 1975 in which defendant appeals from the conviction and sentencing.

A motion to reduce sentence under Super. R. Crim. P. 35 was heard on June 17, 1975, at the conclusion of which the motion was denied. Although defendant asserts in his brief that he is appealing from that ruling, no notice of appeal to that ruling was ever filed. Hence, the denial of the motion to reduce sentence is not properly before this court. Review of the sentence might be proper, however, as long as objection was registered when sentence was imposed. Since there is no record of the specifics of the proceeding at that time. it is impossible for us to know whether defendant made a timely objection.

since we are not informed of the background of each defendant.

An excessive sentence argument calls into question the propriety of the sentencing justice's exercise of discretion. Sentences are imposed in cases such as this one after a complete presentence report is proffered to the trial justice. Super. R. Crim. P. 32(c)(2). For us to make a threshold determination that the challenged sentence is disparate to others, without beginning to consider whether the sentence was justified, we must know what the sentencing justices knew when they imposed the various sentences.

The defendant's objection to the admission into evidence of the testimony of undercover agent Langlois is sustained, the judgment of conviction is reversed, and the case is remitted to the Superior Court for a new trial.

*Julius C. Michaelson*, Attorney General, *Gregory L. Benik*, Special Asst. Attorney General, *Judith Romney Wegner*, Special Asst. Attorney General, for plaintiff.

*William F. Reilly*, Public Defender, *Joseph L. DeCaporale*, Asst. Public Defender, for defendant.