**Rex Bryan McCUBBIN, Appellant,**

v.

**The STATE of Oklahoma, Appellee.**

**No. F–80–629.**

Court of Criminal Appeals of Oklahoma.

Jan. 24, 1984.

Terry L. Meltzer, Tulsa, for appellant.

Michael C. Turpen, Atty. Gen., Alan B. Foster, Asst. Atty. Gen., Oklahoma City, for appellee.

## OPINION

CORNISH, Judge:

Rex Bryan McCubbin was convicted of Murder in the First Degree in the District Court of Texas County, and was sentenced to life imprisonment.

Evidence at trial established that Ben Stokes, a seventy-three year old bailbondsman, was beaten to death with a blunt instrument. His body was found in a remote corner of his ranch next to a blood-stained pick-axe handle. Bloodstains matching Stokes' bloodtype were also found in a nearby farmhouse owned by him. It appears that Stokes sustained his fatal injuries in the farmhouse. At the time of the crime, appellant and his co-defendant, Michael Wayne Taylor, resided in the farmhouse and worked for Stokes. Both men testified that they did not kill Stokes, but "large quantities of both circumstantial and direct evidence pointed toward their guilt." See *Taylor v. State*, 659 P.2d 374, 375 (Okl.Cr.1983), where this

Court affirmed the conviction of co-defendant Taylor.

Crucial evidence of guilt was provided by Sid Cookerly, a private investigator and former O.S.B.I. agent, who testified that he "arranged with the sheriff's office and district attorney's office in Texas County to be placed in jail so [he] would be in a place to overhear ... conversations and report them to the sheriff's office and/or district attorney's office." He was not paid for his services. Posing as a prisoner in transit to Nevada, Cookerly was dressed in jail clothes, and put in a cell near appellant on October 25, 1979. His first words to appellant were "I don't want to talk to you, man. I am tired and I want to go to sleep." He lay down on a bunk and "a more or less one-sided conversation" ensued during which appellant said "[m]y partner and I are charged with first degree murder. We killed an old bailbondsman."

Appellant contends that, by planting an informer in his jail cell after judicial proceedings had been initiated against him, the Texas County sheriff violated his Sixth Amendment right to counsel and that Cookerly's testimony should have been suppressed under the rule announced by the Supreme Court in *Massiah v. United States,* 377 U.S. 201, 84 S.Ct. 1199, 12 L.Ed.2d 246 (1964). We agree.

The Supreme Court in *Massiah* held that the accused's Sixth Amendment right to counsel was violated "when there was used against him at his trial evidence of his own incriminating words, which federal agents had deliberately elicited from him after he had been indicted and in the absence of his counsel." *Id.* at 206, 84 S.Ct. at 1203. In *United States v. Henry,* 447 U.S. 264, 100 S.Ct. 2183, 65 L.Ed.2d 115 (1980), government agents had instructed an informant who shared defendant's jail cell "to be alert to any statements made by the federal prisoners, but not to initiate any conversation with or question" the defendant regarding the charges against him. *Id.* at 266, 100 S.Ct. at 2184. The informant later testified at trial about incriminating statements made by defendant while the two shared the jail cell. The Supreme Court, relying on *Massiah,* held that "[b]y intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel, the government violated Henry's Sixth Amendment right to counsel." *Id.* at 274, 100 S.Ct. at 2189.

The State argues that the Massiah rule applies, as Justice Powell suggested in his concurring opinion to *Henry,* only where "the informant's actions constituted deliberate and "surreptitious interrogation.'" *Henry,* 447 U.S. at 276, 100 S.Ct. at 2190. The State argues that Cookerly neither questioned appellant about the homicide nor encouraged conversation, and therefore the *Massiah* rule should not apply. The record supports the State's contention that Cookerly was merely a passive listener. The question then becomes: whether the appellant's Sixth Amendment right to counsel was violated when, after judicial proceedings had begun, the State planted an informer, posing as a prisoner, in jail near appellant for the sole purpose of overhearing incriminating statements, even though the informant did not interrogate appellant? We believe that appellant's right to counsel was violated and that the informant's testimony should have been excluded.

Although, the Supreme Court has not addressed this precise issue, courts in other jurisdictions have ruled that such tactics violate the accused's right to counsel, and that evidence so obtained should be excluded. In *State v. McCorgary,* 218 Kan. 358, 543 P.2d 952 (1975), cert. den. 429 U.S. 867, 97 S.Ct. 177, 50 L.Ed.2d 147 (1976), a police informer posing as a prisoner and incarcerated with defendant made friendly overtures but did not question defendant about the homicide charge against him. The Supreme Court of Kansas stated that

> interrogation or the lack of it does not determine the admissibility question. When the police or other state officers surreptitiously place a defendant in a cell with an informer for the purpose of obtaining information concerning pending

charges in the absence of counsel, such action by the police contravenes the basic dictates of fairness in the conduct of criminal causes and violates the fundamental rights afforded by the presence of counsel.

*Id.* at 957.

Similarly, in *State v. Travis*, 116 R.I. 678, 360 A.2d 548 (1976), a defendant was arrested and given *Miranda* warnings. He refused to make any statement and expressed a desire to consult with an attorney. Shortly thereafter an undercover agent, handcuffed, long-haired, bearded and dressed in "modtype" clothing, entered the cell. The agent made conversation to put defendant at ease, but did not interrogate him. The defendant eventually made statements amounting to a confession. In reversing the conviction, the Supreme Court of Rhode Island stated:

> We attach no significance as to whether the agent in the cell asked questions of the duped defendant or not.... The mere presence of [the undercover agent] was an inducement to speak, and an inducement by a police officer. We see no significant difference between a uniformed police officer asking questions of defendant and [the undercover agent's] presence inside the cell block with defendant. There was no knowing and intelligent waiver by defendant of his constitutional rights and one will not be presumed lightly. The undercover agent's ruse amounted to proscribed 'further interrogation.' (Citations omitted.)

*Id.* 360 A.2d at 551.

In *State v. Webb*, 625 S.W.2d 281 (Tenn. Cr.App.1980), cert. den., 456 U.S. 910, 102 S.Ct. 1760, 72 L.Ed.2d 168 (1982) an undercover agent was placed in a cell with two codefendants to obtain information about a homicide. The trial judge allowed the agent to testify about a conversation overheard between the two. On appeal, the Tennessee Court of Criminal Appeals reversed, stating:

> The issue in this case is whether the action of the government constituted an 'interrogation.' It is clear that [the un-

dercover agent] was placed in the cell with appellant for the purpose of obtaining information concerning the homicide. Likewise, [the other co-defendant] was placed in the same cell with appellant in hope that an incriminating conversation would take place. It did. The incriminating statements were *deliberately elicited* by the action of the state. *This action amounted to an interrogation.* We agree with the appellant that his right to counsel was subverted. In these circumstances the officers did indirectly what they could not do directly. The trial judge erred in allowing [the undercover agent's] testimony into evidence. (Emphasis added.)

*Id.* at 284.

Similarly, in *Malone v. State*, 390 So.2d 338 (Fla.1980), cert. den., 450 U.S. 1034, 101 S.Ct. 1749, 68 L.Ed.2d 231 (1981), a prisoner agreed to act as an informer in the investigation of a homicide. Initially a cellmate of the defendant, the informer was transferred to another county jail, then returned in civilian clothes and visited defendant as part of a police plan to obtain incriminating statements. The informer testified that he did not question or in any way interrogate defendant. Nonetheless, defendant, under the impression that the informer would be able to assist him on the outside, made incriminating statements. The Supreme Court of Florida held that the

> incriminating statements made to the State informant while in custody in the Pinellas County jail should have been suppressed because these statements made in the absence of counsel, with no prior waiver of counsel, were *directly elicited* by the State's stratagem *deliberately designed to elicit* an incriminating statement from Malone. Therefore, the introduction of these statements violated Malone's sixth amendment right to the assistance of counsel. (Emphasis added.)

*Id.* at 339.

The language of *Massiah* and *Henry* is not so narrow as to limit the holdings of those cases to situations involving explicit questioning. *Massiah* held that the ac-

cused's rights were violated when federal agents "deliberately elicited" incriminating statements. In *Henry* the government violated the defendant's right to counsel, "[b]y intentionally creating a situation likely to induce Henry to make incriminating statements without the assistance of counsel.... *"Henry,* 447 U.S. at 274, 100 S.Ct. at 2189.

In *Brewer v. Williams,* 430 U.S. 387, 97 S.Ct. 1232, 51 L.Ed.2d 424 (1977), the Supreme Court rephrased the *Massiah* rule as follows: "[T]he clear rule of Massiah is that once adversary proceedings have commenced against an individual, he has a right to legal representation 'when the government *interrogates* him." *Id.* at 401, 97 S.Ct. at 1240. (Emphasis added.) Although the opinion uses the word "interrogate", the facts of Brewer indicate that the Supreme Court was not limiting *Massiah* to cases involving formal questioning. In *Brewer* a detective made the now well-known "Christian burial speech", then stated "I do not want you to answer me. I don't want to discuss it any further. Just think about it as we're driving down the road." *Id.,* at 394, 97 S.Ct. at 1237. The accused then led the detective to incriminating evidence. The speech and warning not to talk did not constitute "interrogation" in the usual sense. Nonetheless, the Supreme Court approved the characterization of the "Christian burial speech" as "tantamount to interrogation." *Id.* at 400, 97 S.Ct. at 1240. The detective in *Brewer* "deliberately and designedly set out to elicit information from [the accused] just as surely as—and perhaps more effectively than—if he had formally interrogated him." *Id.* at 399, 97 S.Ct. at 1240.

■ In the instant case, Cookerly was selected in advance by the Sheriff and District Attorney to obtain information about Stokes' death. He was placed in jail with appellant pursuant to such arrangement. This occurred after appellant was arrested and charged, and counsel had been appointed to represent him. In this manner, the Texas County Sheriff deliberately elicited incriminating words from appellant in violation of his Sixth Amendment right to counsel. *Massiah,* supra. The informer's testimony was based on information surreptitiously obtained by prior arrangement with police, and should not have been admitted at trial. *McCorgary,* supra.

■ As the Tennessee Court of Criminal Appeals stated in reversing a conviction based upon incriminating statements by the defendant as he entered the cell of a police informer,

> [a]ll will agree that had the officer entered the cell, identified himself, and asked questions which produced incriminating information, such information would not have been admissible. The law will not permit law enforcement officials to do by ruse, trickery, deceit and deception that which it [sic] is not permitted to do openly and honestly.

*State v. Berry,* 592 S.W.2d 553, 561 (Tenn. 1980), cert. den., 449 U.S. 887, 101 S.Ct. 241, 66 L.Ed.2d 112.

Similarly, in *State v. McCorgary,* supra, the Kansas Supreme Court stated:

> A police officer seeking information under similar circumstances would be required to inform the accused of his right to counsel and not proceed further until the accused knowingly and voluntarily waived such right. The whole purpose of the state in using a secret informer is to avoid that which is required of a police officer. What the state may not do directly to secure evidence, it cannot do indirectly. Such unfair tactics, if permitted, would override the individual's constitutionally based rights. (Citations omitted.)

543 P.2d at 958.

■ It should be noted that the exclusionary rule announced in *Massiah* does not apply to voluntary statements of a defendant to private citizens. If a defendant is injudicious in his conversations with fellow prisoners and the latter, without prior arrangements with the police, tell police officials of these conversations, such testimony is admissible in evidence. *State v. McCorgary,* supra, 543 P.2d at 957. "It is

only when the state actively engages in prior arrangements with an informer to obtain desired information in contravention of constitutionally protected rights that the sanction of suppression of the evidence is applied." 543 P.2d at 958.

Reviewing the record in light of the erroneous admission of these incriminating statements into evidence, we are unable to conclude beyond a reasonable doubt that the informer's testimony did not influence the jury. *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). Accordingly judgment is REVERSED and the cause is REMANDED for a new trial.

BRETT, J., concurs.

BUSSEY, P.J., not participating.