May 22, 2024

**Supreme Court**

No. 2022-63-C.A.
(P1/20-1885AG)

|  |  |
|---|---|
| State | : |
| v. | : |
| Marklyn Brown. | : |

NOTICE: This opinion is subject to formal revision before publication in the Rhode Island Reporter. Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone (401) 222-3258 or Email opinionanalyst@courts.ri.gov, of any typographical or other formal errors in order that corrections may be made before the opinion is published.

State                          :

v.                             :

Marklyn Brown.                 :

Present: Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ.

### O P I N I O N

**Justice Long, for the Court.**  The state appeals from an order granting the

defendant's (defendant or Mr. Brown) motion to suppress evidence of a conversation

between Mr. Brown and his mother recorded by the Providence police in an

interview room at the Providence Police Department (police station).  On appeal, the

state argues that the trial justice erred in suppressing this conversation because Mr.

Brown did not possess a reasonable expectation of privacy while at the police

station.[1]  For the reasons set forth in this opinion, we affirm the order of the Superior

Court.

---

[1] Initially, the state also appealed the trial justice's order suppressing segments of the defendant's station-house interrogation and argued that the trial justice improperly determined that Mr. Brown invoked his right to remain silent pursuant to the Fifth Amendment to the United States Constitution.  The state has abandoned this argument on appeal.

## Facts and Procedural History

We recite the following summary of relevant facts, which appear in the record of the proceedings in Superior Court. This matter arises out of the Providence police's seven-hour interrogation of Mr. Brown, attendant with his arrest and eventual indictment for a shooting that resulted in the death of Ms. Berta Pereira-Roldan, and Mr. Brown's subsequent attempt to suppress the content of this station-house interrogation.[2]

On February 6, 2020, at approximately 6:15 a.m., Providence police officers executed an arrest warrant at the home of Mr. Brown's mother and apprehended Mr. Brown. Later that morning, at approximately 9:45 a.m., five different Providence police officers began questioning Mr. Brown in an interview room at the police station about his alleged involvement in Ms. Pereira-Roldan's death, and sought to obtain a confession from him. Throughout the duration of this interrogation, the interrogating officers engaged in repeated attempts (1) to convince Mr. Brown that

---

[2] Along with two additional codefendants—Mr. Johnny Veng and Mr. Jimmy Castillo—the state charged Mr. Brown with the following offenses: (1) murder; (2) four counts of discharging a firearm while committing a crime of violence; (3) conspiracy to commit murder; (4) three counts of assault with a dangerous weapon; (5) conspiracy to commit assault with a dangerous weapon; (6) two counts of possession of a stolen firearm; (7) carrying a stolen firearm while committing a crime of violence; (8) two counts of carrying a pistol without a license; (9) conspiracy to carry a pistol without a license; (10) discharging a firearm within a compact part of the City of Providence; and (11) carrying a firearm while having been previously convicted of a crime of violence.

the state had obtained overwhelming evidence of his guilt in this matter; (2) to persuade Mr. Brown to admit his involvement in killing Ms. Pereira-Roldan based on a theory that he accidentally shot her; and (3) to pressure Mr. Brown into accepting responsibility for his alleged actions through their insistence that he had a moral obligation to do so.

Despite the efforts of the five officers, Mr. Brown refused to incriminate or otherwise implicate himself in this matter; instead, he adamantly maintained that he did not wish to speak with them and expressed his wish to speak with his mother. Specifically, Mr. Brown repeatedly expressed not only his unwillingness to communicate with the interrogating officers, but also his exclusive desire to speak with his mother, as exemplified by the following exchange with Detective Theodore Michael beginning on page twenty-two of the interrogation transcript:

> "MR. BROWN: I want to talk to my mom. That's all I want to talk to.
>
> "[DETECTIVE] MICHAEL: I can make that happen. I can definitely make that happen. 'Cause we told your mom that we would call her. Your mom doesn't know what's going on, just to let you know. Okay? I will get on making a call to your mom to come down here. Okay?
>
> "MR. BROWN: Yeah, 'cause that's the only person I really want to talk to as of, like, right now. Only person I want to talk to."

Despite their explicit acknowledgment of Mr. Brown's decision to remain silent, the interrogating officers continued to question him in the attempt to extract a confession.

After more than three hours of interrogation, the interrogating officers finally honored Mr. Brown's request and permitted him to speak to his mother. Immediately before allowing Mr. Brown's mother to enter into the interview room, the following interaction took place between Mr. Brown and Detective Michael Otrando:

> "MR. BROWN: WHAT'S GOING ON?
>
> "[DETECTIVE] OTRANDO: Boss. Mom's here.
>
> "MR. BROWN: All right. How can I speak with her?
>
> "[DETECTIVE] OTRANDO: We're gonna bring Mom in here.
>
> "MR. BROWN: Okay.
>
> "[DETECTIVE] OTRANDO: We're gonna leave this room.
>
> "MR. BROWN: Fair enough. I appreciate that."

During the fifty-minute conversation between Mr. Brown and his mother, the interrogating officers recorded and listened to their discussion by using recording equipment present in the interview room. After the interrogating officers terminated

their conversation, they continued to question Mr. Brown for three additional hours until they acquiesced to his repeated requests to return him to his cell.

Following this interrogation, Mr. Brown moved to suppress the statements he made to the interrogating officers and argued that the officers violated his Fifth Amendment right against self-incrimination; his Sixth Amendment right to counsel; and his right under article 1, section 13 of the Rhode Island Constitution against self-incrimination. Additionally, Mr. Brown moved to suppress the recorded statement he made to his mother at the Providence police station and argued that the officers' surreptitious recording violated the Fourth Amendment to the United States Constitution; violated the Rhode Island Constitution; and constituted an unauthorized wiretap pursuant to G.L. 1956 § 11-35-21.

On December 9, 2021, a justice of the Superior Court heard Mr. Brown's motions to suppress. During the hearing, the state confirmed the seven-hour length of the interrogation and explained that, during this seven-hour period, Mr. Brown had a fifty-minute conversation with his mother. Additionally, the state stipulated (1) that Mr. Brown's mother could not recall having been told that the police would record her conversation with Mr. Brown in the interview room and (2) that the officers could not recall having informed her that the recording equipment would be operational during her conversation with her son. Regarding the interrogation's initiation, Det. Michael testified that, prior to the interrogation, the interrogating

officers advised Mr. Brown of his rights pursuant to *Miranda v. Arizona*, 384 U.S. 436 (1966).

Ultimately, the trial justice suppressed both the interrogation, beginning at page twenty-two of the interrogation transcript, and Mr. Brown's entire conversation with his mother. The trial justice determined that Mr. Brown asserted his right to remain silent when he stated that he wanted to speak with his mother and only with his mother, thus clearly implying that he did not want to speak with them. With respect to Mr. Brown's conversation with his mother, the trial justice determined that those same statements to the interrogating officers, recorded on page twenty-two of the interrogation transcript, also clearly implied that Mr. Brown reasonably expected that the officers would not involve themselves in his conversation with his mother when left alone with her. In evaluating Mr. Brown's expectation of privacy, the trial justice noted the lack of evidence indicating that the interrogating officers informed his mother that they would record their conversation. Finally, the trial justice supported his decision to suppress the remainder of the interrogation by referencing Mr. Brown's affirmative statement, once the interrogation resumed, that he did not wish to answer any further questions.

The trial justice subsequently entered an order granting in part Mr. Brown's motions to suppress; the state filed a premature but timely notice of appeal,

challenging the trial justice's decision that Mr. Brown had a reasonable expectation of privacy when he spoke to his mother in the interview room.

## Standard of Review

This Court reviews the findings of fact contained in a trial justice's decision on a motion to suppress for clear error. *State v. Jimenez*, 276 A.3d 1258, 1266 (R.I. 2022). However, we conduct a *de novo* review of the record and determine from our independent review whether the state has violated the constitutional rights of the accused. *Id.* In the context of our review of a trial justice's ruling on a motion to suppress concerning the Fourth Amendment, we determine, based on the totality of the circumstances, whether the state obtained the controverted evidence in violation of our constitutional protections against warrantless searches and seizures. *See State v. Sinapi*, 295 A.3d 787, 799 (R.I. 2023).

## Discussion

The United States Supreme Court has established that the Fourth Amendment protects individuals against arbitrary government interference into their privacy and security. *Camara v. Municipal Court of City and County of San Francisco*, 387 U.S. 523, 528 (1967). Additionally, this Court has held that a search violative of the Fourth Amendment takes place when (1) the government violates an individual's subjective expectation of privacy and (2) our society finds that expectation objectively reasonable. *Sinapi*, 295 A.3d at 800. Finally, this Court has

acknowledged that the Fourth Amendment protects people, not the locations they occupy; that no single factor determines whether an individual possesses a reasonable expectation of privacy; and that the touchstone of this analytic framework is reasonableness.[3] *Id.*

Based upon our independent review of the record in this case, which includes a video recording of the interrogation as well as the interrogation transcript, we are satisfied that the trial justice conducted a proper analysis of Mr. Brown's motion to suppress and that the Providence police violated Mr. Brown's Fourth Amendment rights as well as his rights pursuant to article 1, section 6 of the Rhode Island Constitution when they recorded his conversation with his mother.

More specifically, the record supports the trial justice's conclusion that Mr. Brown had a reasonable expectation of privacy when he spoke with his mother in the interview room. Almost immediately upon arrival at the police station at 9:15 a.m., Mr. Brown refused to meaningfully engage with the interrogating officers, as both his body language during the interrogation and lack of responses to their questions show. He informed the officers that he had no answers for them, and he

---

[3] Regarding article 1, section 6 of the Rhode Island Constitution—this state's analogue to the Fourth Amendment—this Court has held that this provision may provide greater protections to individuals than provided under the Fourth Amendment. *Sinapi*, 295 A.3d at 805. Although the Supreme Court controls this Court's application of federal constitutional law, we remain free to interpret our constitution in a manner that affords greater protections to individuals in this state. *See id.*; *see also State v. Werner*, 615 A.2d 1010, 1012 (R.I. 1992).

further declared that he wished to speak only with his mother, thereby asserting his right to remain silent rather than speak with them. Once the officers told Mr. Brown that his mother had arrived at the police station, Mr. Brown immediately asked the interrogating officers how he could speak with her; Det. Otrando responded by representing to Mr. Brown that they would leave the room for the duration of their conversation; and Mr. Brown thanked him. Additionally, when discussing his mother's arrival, Mr. Brown described his request to speak with her in the following way: "I just want to have my one-on-one with my mom before y'all bring me in there. That's it." The evidence presented in this record supports the trial justice's finding that both the nature of Mr. Brown's request and the officers' words and conduct in response to it demonstrated that Mr. Brown possessed a legitimate, subjective expectation of privacy in his conversation with his mother. *Sinapi*, 295 A.3d at 800. Mr. Brown was entitled to rely on the officers' assurances of privacy when Det. Otrando said "We're gonna leave this room."

Moreover, the totality of the circumstances surrounding Mr. Brown's conversation supports the conclusion that his subjective expectation of privacy is one that society would find objectively reasonable. There is no evidence that the interrogating officers warned either Mr. Brown or his mother that they planned to record their conversation. Further, Mr. Brown's interaction with Det. Otrando supports the inference that the officers created an environment that would lull Mr.

- 9 -

Brown and his mother into believing that they would be able to speak privately. *Cf. Arizona v. Mauro*, 481 U.S. 520, 526 (1987) (noting that *Miranda*'s privilege against compulsory self-incrimination extends to a variety of psychological ploys used by interrogating officers that attempt to compel a suspect into making a confession). As the trial justice correctly noted, the interaction that Mr. Brown had with Det. Otrando clearly implied that the interrogating officers would allow him to speak privately with his mother. We therefore conclude that Mr. Brown possessed a reasonable expectation of privacy pursuant to the Fourth Amendment. *Sinapi*, 295 A.3d at 800.

Although we have determined that Mr. Brown possessed a reasonable expectation of privacy pursuant to the Fourth Amendment, we further conclude that Mr. Brown possessed an additional—adequate and independent—expectation of privacy pursuant to article 1, section 6 of the Rhode Island Constitution. While this Court has typically deferred to controlling federal law when interpreting our constitutional analogue, we conclude that article 1, section 6 of the Rhode Island Constitution also protects Mr. Brown's conduct as a matter of state constitutional law.[4]

---

[4] Based on this Court's determination that both the Fourth Amendment and article 1, section 6 of the Rhode Island Constitution bar the state from using Mr. Brown's conversation with his mother, we decline to reach Mr. Brown's contention that this surreptitious recording constituted an unlawful wiretap pursuant to G.L. 1956 § 11-35-21.

- 10 -

In an effort to convince this Court that the trial justice committed a reversible error, the state offers several arguments. With respect to the interrogating officers' behavior, the state argues that Mr. Brown did not possess a reasonable expectation of privacy because Mr. Brown did not ask for—and the police officers did not expressly represent that he could have—a private, unrecorded conversation. This argument misunderstands bedrock principles of Fourth Amendment jurisprudence and those undergirding article 1, section 6. This Court analyzes the existence of an individual's expectation of privacy by evaluating the totality of the circumstances surrounding the state's allegedly unlawful conduct. *Sinapi*, 295 A.3d at 799. As a result, the fact that the interrogating officers failed to inform Mr. Brown that they would provide him with the opportunity to have an unrecorded conversation cannot overcome the reality that they fostered an environment, based on their words and conduct, wherein Mr. Brown could reasonably believe that he had engaged in a private conversation. Therefore, we reject this myopic justification.

The state next argues that Mr. Brown lacked a reasonable expectation of privacy in his conversation based on the fact that, once the meeting concluded, Sergeant Fabio Zuena indicated to Mr. Brown his awareness of the content of the mother-son conversation, and Mr. Brown responded by correctly assuming that the

police had surreptitiously recorded it.[5] The state further asserts that the trial justice overlooked this interaction in his analysis. This argument ignores inference. In the event that an individual learns that an absent third party has become familiar with the content of an ostensibly private conversation, that individual may quite reasonably infer that a third party has monitored that conversation. Put differently, Mr. Brown's acknowledgement of Sgt. Zuena's awareness of the content of the conversation simply demonstrates that, during this interaction with Sgt. Zuena, Mr. Brown learned that the police had eavesdropped on his conversation. The fact that Mr. Brown identified the medium through which the police monitored the conversation does not necessarily imply that Mr. Brown knew, from the inception of the conversation, that the interrogating officers were recording it.

---

[5] Specifically, the state points to the following exchange between Mr. Brown and Sgt. Zuena:

> "[SERGEANT] ZUENA: Trying to help you out, man. She's trying to help you out, man. She told a few things, what you guys discussed, man. That's all. I'm just telling you. How the * * * would I know that?
>
> "MR. BROWN: Camera.
>
> "[SERGEANT] ZUENA: The cam-, what's the camera got to do with it?
>
> "MR. BROWN: There's a camera in this room, and it's probably being voice-recorded. I know what you guys do in an interrogation room."

Finally, the state cites to cases from outside Rhode Island in an attempt to persuade us that Mr. Brown could not have had a reasonable expectation of privacy in a police interrogation room. This argument fails for two reasons. First, we have unmistakably held that the Fourth Amendment and article 1, section 6 of the Rhode Island Constitution protect people, not the locations they find themselves in. *Sinapi*, 295 A.3d at 800. Where, as here, interrogating officers create an environment that reasonably allows an individual suspected of a crime to believe that they may have a private conversation, an objectively reasonable expectation of privacy in the content of that conversation exists.

Second, we have held that law enforcement officers lack the authority to engage in an indirect interrogation of a suspect when they do not have the authority to proceed with a direct interrogation. *State v. Travis*, 116 R.I. 678, 682-83, 360 A.2d 548, 551 (1976). Even if this Court assumed that Mr. Brown had a full awareness that the interrogating officers recorded his conversation from the outset, Mr. Brown's invocation of his right to remain silent prevented them from attempting to extract further information in support of their investigation. *See Miranda*, 384 U.S. at 473-74 ("Once warnings have been given, the subsequent procedure is clear. If the individual indicates in any manner, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease."). Relatedly, our decision to affirm the suppression of this conversation comports with existing Fourth

Amendment precedent noting that excluding improperly obtained evidence serves as a prospective deterrent on impermissible law enforcement behavior. *United States v. Janis*, 428 U.S. 433, 446 (1976). Therefore, we reject the state's attempt to persuade us otherwise.

This Court is satisfied from our review of the record that the trial justice properly reviewed and granted Mr. Brown's motion to suppress his station-house conversation with his mother. Therefore, we conclude that Mr. Brown possessed a reasonable expectation of privacy pursuant to the Fourth Amendment and article 1, section 6 of the Rhode Island Constitution.

## Conclusion

Based on the foregoing, we affirm the order of the Superior Court and remand the record in this case.

**STATE OF RHODE ISLAND**

**SUPREME COURT – CLERK'S OFFICE**
Licht Judicial Complex
250 Benefit Street
Providence, RI 02903



## OPINION COVER SHEET

| | |
|---|---|
| **Title of Case** | State v. Marklyn Brown. |
| **Case Number** | No. 2022-63-C.A. (P1/20-1885AG) |
| **Date Opinion Filed** | May 22, 2024 |
| **Justices** | Suttell, C.J., Goldberg, Robinson, Lynch Prata, and Long, JJ. |
| **Written By** | Associate Justice Melissa A. Long |
| **Source of Appeal** | Providence County Superior Court |
| **Judicial Officer from Lower Court** | Associate Justice Robert D. Krause |
| **Attorney(s) on Appeal** | For State:<br><br>Virginia M. McGinn<br>Department of Attorney General<br>For Defendant:<br><br>Kara J. Maguire<br>Rhode Island Public Defender |